62 P.3d 966

Jon C. CAMPBELL and Janice E. Campbell, husband and wife, Plaintiffs, Counterdefendants–Appellants,

v.

SZL PROPERTIES, LTD., No. 3, a partnership; L.A.S. Partnership, L.P., a limited partnership, Defendants, Counterclaimants–Appellees.

No. 1 CA–CV 01–0050.

Court of Appeals of Arizona, Division 1, Department T.

Feb. 4, 2003.

Bell Law Office, P.C. By Leonard M. Bell, Phoenix, Attorneys for Plaintiffs, Counterdefendants–Appellants.

Ryley, Carlock & Applewhite By John C. Lemaster, Phoenix, Attorneys for Defendants, Counterplaintiffs–Appellees.

## OPINION

HALL, Judge.

¶ 1 This case requires us to decide whether a trial court judgment that is vacated pursuant to the parties' settlement of the case while it is pending on appeal nonetheless retains collateral estoppel effect in a subsequent lawsuit involving one of the original parties. The trial court determined that Jon and Janice Campbell were precluded from relitigating a property boundary dispute that was resolved against them in the vacated judgment and granted summary judgment against them. We conclude that the collateral estoppel doctrine does not apply to judgments that have been vacated. Accordingly, we vacate the grant of summary judgment and the judgment quieting title in SZL and awarding SZL its attorneys' fees, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 This case involves a dispute between the Campbells and SZL Properties, Ltd., No. 3, and L.A.S. Partnership, L.P., related entities (collectively "SZL"), over ownership of a strip of land that is a private roadway. The Campbells and SZL both own commercial property located in Phoenix within Lot 11 of Stephen Subdivision. Lot 11 is bordered by Gibson Lane to the north, 14th Street to the east, and Lot 12 of the subdivision to the west.

¶ 3 The Campbells own a parcel in the middle of Lot 11 that is 331.37 feet by 120 feet and spans the entire width of Lot 11 from east to west. SZL owns a parcel 168.37 feet by 400 feet immediately north of the Campbell property. SZL's property extends north to Gibson Lane, but does not span the full width of Lot 11, lying only on the western side. Immediately north of the Campbell property on the eastern side lies property previously owned by Wayne Barnes (the "Barnes property"). The roadway at issue runs along the entire width of Lot 11 from 14th Street to Lot 11's western boundary with Lot 12. It borders the Campbell property on the north and the SZL and Barnes property on the south. The width of the roadway varies between nineteen and twenty-five feet.

¶ 4 In 1986, Barnes sued the Campbells to determine ownership of the eastern part of the road. SZL was not a party to this action. The trial court entered summary judgment for Barnes, finding that the eastern part of the roadway lay almost entirely within the boundaries of his property. The Campbells appealed, but the appeal was stayed when Barnes filed for bankruptcy. The appeal was subsequently dismissed pursuant to the parties' stipulation. In 1991, pursuant to further stipulation of the Campbells and the trustee in bankruptcy, the trial court vacated the judgment that had been entered for Barnes against the Campbells.

¶ 5 On May 7, 1999, the Campbells filed suit against SZL to quiet title to the western part of the roadway, contending that the roadway lies entirely within the recorded boundaries of their property. SZL counterclaimed for quiet title to the roadway, claiming that the western part of the roadway lies mostly within the recorded boundaries of its property and the eastern part mostly within the recorded boundaries of the Barnes property. Alternatively, each party claimed title to the roadway through adverse possession.

¶ 6 SZL sought summary judgment on three grounds: (1) the Campbells were precluded from relitigating the issue of ownership of the roadway by the summary judgment entered in favor of Barnes, (2) the undisputed material evidence showed that the western part of the roadway lay almost entirely within the recorded boundaries of SZL's property, and (3) SZL had acquired title to the roadway through adverse possession pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–523 to –525 (1992). In their response and cross motion for summary judgment, the Campbells disputed that SZL was entitled to summary judgment on its counterclaim and sought summary judgment on two grounds: (1) the undisputed material evidence showed that the roadway lay within their recorded boundaries and (2) one of their predecessors-in-interest had acquired title to the roadway through adverse possession.

¶ 7 The trial court entered summary judgment in favor of SZL after finding that the Campbells were precluded from relitigating the issue of title to the roadway. The court quieted title to the western part of the roadway in SZL and granted SZL's request for attorneys' fees pursuant to A.R.S. § 12–1103(B) (1994). The Campbells timely appeal the judgment and award of attorneys' fees.

## DISCUSSION

¶ 8 "In reviewing the granting of a motion for summary judgment, we must view the facts in a light most favorable to the party opposing the judgment." *Hartford Accident & Indem. Co. v. Fed. Ins. Co.*, 172 Ariz. 104, 107, 834 P.2d 827, 830 (App.1992). We determine de novo whether a genuine issue of material fact exists and whether the trial court correctly applied the substantive law. *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993). The application of collateral estoppel is a question of law that we review de novo. *Phoenix Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 240, 934 P.2d 801, 804 (App.1997).

¶ 9 Collateral estoppel, or issue preclusion, binds a party to a decision on an issue litigated in a previous lawsuit if the following factors are satisfied: (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is common identity of the parties. *Garcia v. Gen. Motors Corp.*, 195 Ariz. 510, 514, ¶ 9, 990 P.2d 1069, 1073 (App.1999).

¶ 10 Depending on whether collateral estoppel is being invoked "offensively" or "defensively," the last element regarding common identity of the parties may not be required. Offensive use of collateral estoppel occurs when a plaintiff seeks to prevent the defendant from relitigating an issue the defendant previously litigated unsuccessfully in an action with another party; defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff previously litigated unsuccessfully against another party. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). If the first four elements of collateral estoppel are present, Arizona permits defensive, but not offensive use of the doctrine. *Standage Ventures, Inc. v. State*, 114 Ariz. 480, 484, 562 P.2d 360, 364 (1977); *Food for Health Co. v. 3839 Joint Venture*, 129 Ariz. 103, 106–07, 628 P.2d 986, 989–90 (App.1981). Here, the trial judge, after determining that there was no clear line between the "offensive" and "defensive" use of issue preclusion because SZL was making its own claim as well as defending against the Campbell's claim, concluded that the Campbells were collaterally estopped from relitigating the boundary issue that had been determined against them in the Barnes suit because they had a full and fair opportunity to litigate the issue in the prior litigation.

¶ 11 As was the trial court, we would be reluctant to rely on this offensive-defensive dichotomy in determining the applicability of the collateral estoppel doctrine on the facts of this case.[1] We believe, however, that the proper focus of our examination is on whether even the defensive use of collateral estoppel is available when the prior judgment has been vacated and the action dismissed pursuant to stipulation of the parties as was done in this case.

¶ 12 Citing *Food for Health*, the Campbells argue that we have previously determined that collateral estoppel does not apply to issues decided by a judgment that is later vacated. In *Food for Health*, the appellant had argued that the prior judgment could have no preclusive effect for collateral estoppel purposes because the parties reached a compromise while the case was pending appeal and stipulated to have the appeal dismissed with prejudice. 129 Ariz. at 106, 628

---

1. In contradistinction to the Arizona rule, the offensive use of collateral estoppel is not prohibited in federal court. *See Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. 645. "[T]he distinct trend if not the clear weight of recent authority is to the effect that there is no intrinsic difference between 'offensive' as distinct from 'defensive' issue preclusion...." *Id.* n. 16 (quoting Restatement (Second) of Judgments § 88, Reporter's Note, at 99 (tent. Draft No. 2, Apr. 15, 1979)).

P.2d at 989. The court disagreed and held that a party who settles an action while on appeal and then dismisses the appeal is bound by the judgment. *Id.* Without citing any authority, the court then stated "[t]he parties to the stipulation could have provided that the judgment be vacated but they did not do so." *Id.*

¶ 13 SZL urges that this statement is non-controlling dicta. We agree. At most, in the quoted remark, the court simply assumed, without the necessity of deciding, that a judgment that is vacated loses its preclusive effect. There was no need, however, in *Food for Health* for the court to actually consider the issue presented here.

■ ¶ 14 Generally, collateral estoppel does not apply to determinations that are not valid and final decisions on the merits. *Garcia,* 195 Ariz. at 514, 990 P.2d at 1073. According to the Restatement (Second) of Judgments § 13 (1982), a "final judgment" for purposes of issue preclusion "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Therefore, a "judgment ceases to be final if it is in fact set aside by the trial court[.]" *Id.* cmt. f. The majority of jurisdictions follow the Restatement position. *See, e.g., Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,* 970 F.2d 1138, 1146 (2d Cir.1992), *aff'd,* 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (vacated judgment has no preclusive effect); *Pontarelli Limousine, Inc. v. City of Chicago,* 929 F.2d 339, 340–41 (7th Cir.1991) (vacated judgments have no future effect); *Dodrill v. Ludt,* 764 F.2d 442, 444 (6th Cir. 1985) ("judgment which is vacated, for whatever reason, is deprived of its conclusive effect as collateral estoppel"); *Pride v. Harris,* 882 P.2d 381, 383 (Alaska 1994) (vacated judgment cannot have res judicata effect because it is not a final judgment); *Mercantile & Gen. Reinsurance Co. v. Colonial Assurance Co.,* 147 Misc.2d 804, 556 N.Y.S.2d 183, 187 (App.Div.1989) (vacatur of a judgment, as a general rule, "is not a meaningless act for the purposes of issue preclusion"); *Woodrick v. Jack J. Burke Real Estate, Inc.,* 306 N.J.Super. 61, 703 A.2d 306, 316 (App.Div. 1997) (vacated judgment is not a final judg-

ment for purposes of collateral estoppel). *But see Bates v. Union Oil Co. of Cal.,* 944 F.2d 647, 650 (9th Cir.1991) (a vacated judgment does not automatically lose preclusive effect).

¶ 15 Nonetheless, relying on the decision of the Ninth Circuit in *Bates,* SZL argues that the preclusive effect of a judgment should not be denied simply because it was vacated due to the parties' settlement of the case while it was on appeal. In an earlier case, *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d 720, 722 (9th Cir.1982), the Ninth Circuit ruled that in deciding whether to vacate a judgment when the parties seek vacatur as a condition of settlement, district courts must balance "the competing values of finality of judgment and right to relitigation of unreviewed disputes." Otherwise, according to the court, "any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books." *Id.* at 721.

¶ 16 In *Bates,* the court held that a judgment vacated pursuant to the stipulation of the parties without consideration of the *Ringsby* factors does not automatically lose its preclusive effect. 944 F.2d at 650. Instead, those factors can be considered by the district court in a subsequent case to determine the preclusive effect of the vacated judgment. *Id.* SZL asks us to adopt this approach and determine that the trial court in this case was justified in choosing to give preclusive effect to the vacated judgment entered in the Barnes litigation.

¶ 17 Whether a court should vacate a judgment at the behest of the parties as a condition of settlement is a controversial and unsettled issue. *Compare U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,* 513 U.S. 18, 26–28, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (holding that, absent extraordinary circumstances, vacatur by a federal court is not justified when a case is mooted because of settlement) *with Neary v. Regents of Univ. of Cal.,* 3 Cal.4th 273, 10 Cal.Rptr.2d 859, 834 P.2d 119, 126 (1992) (holding that, absent extraordinary circumstances, parties are entitled to a stipulated reversal to effectuate settlement). We find it unnecessary to decide this issue as a mat-

ter of Arizona law, however, because, in either event, we disagree with the holding in *Bates* that effectively permits a court in a subsequent case to entertain a collateral attack upon a finally decided vacatur.

¶ 18 Initially, we note that the question confronting the Ninth Circuit in *Bates* was procedurally distinguishable from the one we address here. Neither party in *Bates* cited *Ringsby* to the district court judge before he vacated the judgment pursuant to the parties' stipulation, and the Ninth Circuit's decision was motivated by its concern that parties be encouraged to ensure that district courts consider the *Ringsby* factors when being asked to vacate a judgment as a condition of settlement. 944 F.2d at 650–51. Further, unlike the Ninth Circuit when it decided *Bates*, we have no precedent analogous to *Ringsby* that requires courts to balance the competing values of finality of judgment versus the right to relitigate before a stipulated motion to vacate judgment is granted.

¶ 19 More importantly, *Bates* runs contrary to the general rule, *supra* ¶ 14, that the collateral estoppel doctrine does not apply to vacated judgments. *See Zeneca Ltd. v. Novopharm Ltd.*, 919 F.Supp. 193 (D.Md.1996) ("The *Bates* case [ ] does not support the general proposition that vacated judgments should be given collateral estoppel effect."). Finally, even if we were to prospectively apply the federal rule favoring finality over settlement to all cases still pending on direct appeal, it would be inequitable to retroactively accord collateral estoppel effect to a judgment that was vacated in 1990. *See U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 598 (Fed.Cir.1995) (declining to reconsider the propriety of a vacatur that was final when *U.S. Bancorp* was decided).

## CONCLUSION

■ ¶ 20 We join the majority of other jurisdictions and hold that a vacated judgment cannot have any collateral estoppel effect. Accordingly, we vacate the trial court's grant of summary judgment to SZL and the judgment quieting title in SZL and awarding SZL its attorneys' fees, and remand for further proceedings consistent with this opinion.[2]

CONCURRING: E.G. NOYES, JR. and WILLIAM F. GARBARINO, Judges.

---

2. In its response brief, SZL raises two cross issues not relied upon by the trial court as alternative grounds for upholding the judgment. *See* ARCAP 13(b)(3). As one issue, SZL claims that it acquired title to the disputed roadway by adverse possession. However, the Campbells also claimed title by adverse possession in their cross-

motion for summary judgment. Because this potentially outcome-determinative issue involves disputed facts and would necessitate remand in any event, we also decline to consider SZL's subordinate cross issue, which involves its claim that the roadway lies within the recorded boundaries of the property.