NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

JOHN R. NORTON, in his capacity as Trustee of the NORTON FAMILY
LIVING TRUST DATED 2/15/96, and ROGER L. STEVENSON, in his
capacity as Managing Successor Trustee of the NORTON FAMILY
LIVING TRUST DATED 2/15/96, individually and on behalf of
PHONEJOCKEY INVESTORS NO. 2, LLC, a Wyoming limited liability
company, *Plaintiffs/Appellants,*

JOHN R. NORTON, in his capacity as Trustee of the NORTON FAMILY
LIVING TRUST DATED 2/15/96 and individually; PJI-2 COLLECTION,
LLC, *Cross-Appellees,*

*v.*

PHONEJOCKEY LLC, a Wyoming limited liability company; JUDSON C.
BALL and NANCY SUE BALL, husband and wife; and PHONEJOCKEY
INVESTORS NO. 2, LLC, a Wyoming limited liability company,
*Defendants/Appellees/Cross-Appellants.*

No. 1 CA-CV 15-0186
FILED 10-13-2016

---

Appeal from the Superior Court in Maricopa County
Nos. CV2011-014515, CV2012-053571, CV2012-053572, CV2013-012882
(Consolidated)
The Honorable Lisa Daniel Flores, Judge
The Honorable Patricia A. Starr, Judge

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Gallegher & Kennedy, P.A., Phoenix
By John P. Flynn, Peter J. Moolenaar
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

Hovore Law, PLLC, Scottsdale
By F. Thomas Hovore
*Counsel for Defendants/Appellees/Cross-Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge Lawrence F. Winthrop and Judge Donn Kessler joined.

---

**S W A N N**, Judge:

**¶1** The superior court entered judgment partially in favor of the plaintiff and partially in favor of the defendants in this derivative action. Both the plaintiff and the defendants appeal. We affirm all aspects of the judgment except its imposition of attorney's fees under Arizona law.

**FACTS AND PROCEDURAL HISTORY**

**¶2** Phonejockey Investors No. 2, LLC ("PJI-2"), is a Wyoming limited liability company managed by Phonejockey, LLC ("Phonejockey"), which is owned and controlled by Judson C. Ball. PJI-2 was formed in 2004 to develop and operate executive suites in the Phoenix metropolitan area. A membership offering agreement identified the first parcel to be purchased and developed ("the Property").

**¶3** The Norton Family Living Trust Dated 2/15/96 ("the Norton Trust") invested in PJI-2, contributing $1,400,000 from 2004 to 2009. During the same period, the Norton Trust also invested in several similar limited liability companies (collectively, "the ADR Companies") managed directly or indirectly by Ball.

**¶4** PJI-2 purchased the Property in 2005 and built a commercial facility ("the Facility") on it in 2006. PJI-2 paid Ball a $30,183 finder's fee related to the Property, and a $626,262 development fee related to the Facility. The Facility opened for business in the beginning of 2007 and

2

over the next five and a half years operated at a cumulative loss of more than $7,000,000. PJI-2 ultimately lost the Property and the Facility to foreclosure in mid-2012.

**¶5**    Meanwhile the Norton Trust had commenced an action in the superior court asserting direct and derivative claims against Phonejockey and Ball related to their management of PJI-2. Also, around the same time, the Norton Trust commenced arbitration proceedings against Ball, Phonejockey, and another of Ball's entities with respect to their management of the ADR Companies. The ADR Companies' governing documents, unlike PJI-2's governing documents, required arbitration. The parties did not agree to arbitrate the claims related to PJI-2.

**¶6**    A three-person panel decided the arbitration matter in March 2013. The Norton Trust was partially successful in the arbitration. The panel concluded, in relevant part, that Ball was indebted to certain of the ADR Companies for unauthorized finder's and development fees. The panel explained that none of the ADR Companies' governing documents authorized Ball to receive finder's fees for the properties identified as the subjects of the investment offerings, and that Ball had received a development fee from one company that did not provide for such a fee in its governing documents.

**¶7**    Soon after the arbitration award issued, the Norton Trust moved for partial summary judgment in the PJI-2 litigation, arguing that the arbitration award collaterally estopped the defendants from arguing that there was no obligation to repay finder's and development fees taken from PJI-2. The Norton Trust emphasized a substantial similarity between PJI-2's and the ADR Companies' governing documents with respect to finder's fees, and noted that the PJI-2 documents do not provide for development fees. Phonejockey and Ball did not dispute the similarities in the governing documents. Nor did they dispute that Ball received the finder's fee for the Property and the development fee for the Facility. They argued, however, that the arbitration award did not satisfy the elements of issue preclusion.

**¶8**    After the arbitration award was confirmed, the superior court granted the Norton Trust's motion and gave preclusive effect to the arbitration panel's determination that finder's and development fees were inappropriate. The court held that Ball was indebted to PJI-2 for the finder's and development fees it had paid.

¶9 The Norton Trust also filed a motion for summary judgment requesting PJI-2's dissolution and liquidation. The Norton Trust argued that dissolution was statutorily required because the loss of the Facility to foreclosure rendered PJI-2's activities no longer reasonably practicable. The defendants objected on jurisdictional grounds, arguing that only a Wyoming court may declare dissolution of a Wyoming entity. The court agreed that it lacked jurisdiction to order PJI-2's involuntary dissolution, and it therefore denied the Norton Trust's motion.

¶10 The litigation ultimately proceeded to a jury trial on claims of breach of fiduciary duty, breach of contract, and breach of the covenant of good faith and fair dealing, all related to the defendants' decision to construct the Facility (and thereby earn management fees) despite unexpectedly difficult economic realities. The jury returned a defense verdict on all of the claims.

¶11 The court entered a final judgment that ordered Ball to pay $656,445 to PJI-2 for the unauthorized finder's and development fees, with pre- and post-judgment interest of 4.25% per annum, and dismissed all other claims and counterclaims. The court awarded Phonejockey and Ball $785,484 in attorney's fees and costs under A.R.S. §§ 12-341 and -341.01(A) with post-judgment interest of 4.25% per annum, and awarded the Norton Trust $131,149 in expenses under A.R.S. § 29-833(A).

¶12 The Norton Trust appeals, and Phonejockey and Ball cross-appeal. The Norton Trust challenges the attorney's fees award, the interest rate on the award against Ball, the amount of the expenses award, the court's refusal to grant its request to redirect PJI-2's award to the Norton Trust's counsel's trust fund, and the court's refusal to order PJI-2's dissolution. The defendants challenge the order requiring Ball to repay the finder's and development fees, and they contend that the Norton Trust was not entitled to recover any expenses.

## DISCUSSION

I. THE SUPERIOR COURT DID NOT ERR BY ORDERING BALL TO REPAY THE FINDER'S AND DEVELOPMENT FEES.

¶13 We first address the defendants' contention in the cross-appeal that the superior court erred by determining Ball's liability for the finder's and development fees based on issue preclusion. We review the grant of summary judgment de novo, viewing the evidence and reasonable inferences in the light most favorable to the non-moving party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). We review the application

of issue preclusion de novo. *Campbell v. SCZ Props., Ltd.*, 204 Ariz. 221, 223, ¶ 8 (App. 2003).

¶14        Issue preclusion binds a defendant to an adverse decision on an issue in a previous lawsuit if:

> (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is common identity of the parties.

*Id.* at ¶ 9.

¶15        Subject to the same qualifications and exceptions, issue preclusion may apply to issues decided in an arbitration proceeding. Restatement (Second) of Judgments § 84 & cmt. c.[1] For issue preclusion to apply, the arbitration proceedings must have "the elements of adjudicatory procedure." Restatement (Second) of Judgments § 84(3)(b). Only "[w]hen arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings [should] the award . . . have the same effect on issues necessarily determined as a judgment has." Restatement (Second) of Judgments § 84 cmt. c.

¶16        Here, the arbitration proceedings were extensive. In discovery, the parties produced over 73,000 pages of documents and deposed 18 witnesses. The panel considered motions for summary judgment, heard 11 days of testimony from 16 witnesses, and received opening statements, closing statements, and post-hearing briefs. On this record, we conclude that the arbitration was sufficiently similar to a judicial proceeding to permit the application of issue preclusion. Further,

---

[1]        We generally follow the Restatement in the absence of controlling state authority. *Dixon v. City of Phoenix*, 173 Ariz. 612, 621 (App. 1992). Under the Restatement, issue preclusion will not attach to an arbitration decision if it would be inconsistent with a legal policy or contractual provision authorizing the court to make an independent determination on the issue, or if the arbitration scheme is summary in nature. Restatement (Second) of Judgments § 84(3)(a).

the record reveals no legal policy or contractual provision prohibiting application of the doctrine.

¶17 The elements of issue preclusion were satisfied. The Norton Trust asserted derivative claims against Ball, in his capacity as a manager, in both the arbitration and the litigation. The parties had a full and fair opportunity and motive in the arbitration proceedings to dispute the meaning of the finder's fees provisions and the effect of the absence of a development fee provision, and they actually did so. The resolution of those issues was essential to determine liability, and the parties disputed them at length.

¶18 The defendants argue, however, that they cannot be precluded from re-litigating issues that they could not appeal. But to accept this argument would be to render all arbitration decisions automatically ineligible for issue preclusion. This would eviscerate the rule that arbitration awards may be given preclusive effect. When parties voluntarily agree to a process that contains no right of appeal, we generally recognize arbitration decisions as valid and final on questions of fact and law. *Smitty's Super-Valu, Inc. v. Pasqualetti*, 22 Ariz. App. 178, 180-81 (1974). The defendants had the opportunity to challenge the award under A.R.S. §§ 12-3023 or -3024, but they ultimately stipulated to a final judgment confirming it. The judgment was valid and final for purposes of the issue preclusion doctrine.

¶19 Defendants also argue that the arbitration decision could not be used as issue preclusion in the litigation because the panel's decisions were limited to the ADR Companies, not PJI-2. But PJI-2 is a nominal party only, and it is undisputed that all of the companies' governing documents share substantially similar provisions regarding management fees. In these circumstances, we see no barrier to the application of issue preclusion. We discern no error in the superior court's decision to preclude re-litigation of the question whether Ball was indebted to PJI-2 for the finder's and development fees.

II. THE SUPERIOR COURT SHOULD HAVE APPLIED WYOMING LAW TO DETERMINE ATTORNEY'S FEES, BUT PROPERLY APPLIED ARIZONA LAW TO CALCULATE JUDGMENT INTEREST.

¶20 We next address the Norton Trust's contention that the superior court erroneously applied Arizona instead of Wyoming law to determine whether to award attorney's fees and to calculate interest. We

review choice-of-law questions de novo. *Swanson v. The Image Bank, Inc.*, 206 Ariz. 264, 266, ¶ 6 (2003). We apply Arizona law to determine choice-of-law issues. *Pounders v. Enserch E&C, Inc.*, 232 Ariz. 352, 354, ¶ 8 (2013).

**¶21** PJI-2's governing documents contain inconsistent choice-of-law provisions: the subscription agreement (between PJI-2 and the Norton Trust) and the management agreement (between PJI-2 and Phonejockey) invoke Arizona law, but the operating agreement (between PJI-2 and the Norton Trust) provides that Wyoming law governs. Further, consistent with the operating agreement, PJI-2's articles of organization provide that the operating agreement may not govern PJI-2's internal affairs in a manner inconsistent with Wyoming law. Both the operating agreement and the management agreement define the scope of the manager's authority and compensation. The operating agreement contains no provision addressing attorney's fees, but the management agreement specifies that the prevailing party in any litigation arising out of the management agreement shall be entitled to reasonable attorney's fees. The operating agreement provides that the management agreement shall apply in the event of any conflict with respect to compensation.

### A.     Wyoming Law Governs Attorney's Fees.

**¶22** Though the choice-of-law provisions of the various agreements conflict, we conclude that application of Wyoming law is necessary with respect to attorney's fees — even as a matter of Arizona law. Had the parties clearly chosen Wyoming law, no further analysis would be necessary. And had the parties clearly chosen Arizona law, A.R.S. § 29-801(A) would require the application of Wyoming law. That statute provides: "the laws of the state or another jurisdiction under which a foreign limited liability company is organized govern its organization and internal affairs and the liability of its members." A.R.S. § 29-801(A). The rule, known as the "internal affairs doctrine," is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's [or other business entity's] internal affairs — matters peculiar to the relationships among or between the [entity] and its current officers, directors, and shareholders — because otherwise a[n entity] could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982); *see also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 90 (1987) ("Th[e] beneficial free market system depends at its core upon the fact that a corporation — except in the rarest situations — is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation."). Accordingly, whether the Arizona or Wyoming choice-of-law provision

controls, the result is the same — directly (through a contractual provision) or indirectly (by operation of § 29-801(A)), Wyoming law governs disputes between members and managers of PJI-2.

¶23        The derivative claims at issue here, which concern management fees and decisions, fall within the scope of PJI-2's internal affairs. *See Edgar*, 457 U.S. at 645; *see also AMERCO v. Shoen*, 184 Ariz. 150, 152 n.1 (App. 1995) (relying on the Restatement (Second) of Conflict of Laws §§ 302 and 309 to conclude that "because this lawsuit concerns fiduciary relations between shareholders and management, where there is a choice of law to be made, the law of Nevada, the place of incorporation, should apply"). So does the question of attorney's fees.

¶24        At oral argument before this court, the defendants argued that Wyoming law would actually require application of Arizona law on attorney's fees, citing *Smithco Engineering, Inc. v. International Fabricators, Inc.*, 775 P.2d 1011 (Wyo. 1989). But *Smithco* was based on the Wyoming court's determination that Oklahoma law treats attorney's fees as procedural. *Id.* at 1018. In Arizona, by contrast, A.R.S. § 12-341.01 is considered substantive. *Bouldin v. Turek*, 125 Ariz. 77, 78 (1979). Attorney's fees in this case are governed by A.R.S. § 29-801(A), which dictates that Wyoming law shall apply. *See Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 206 (1992) ("[S]ubstantive matters are governed by 'the law of the jurisdiction to which the court is referred by the choice-of-law rules of the forum.'" (citation omitted)).

¶25        Under Wyoming law, "each party [is] responsible for its own fees unless an award is permitted by contract or statute." *Dishman v. First Interstate Bank*, 362 P.3d 360, 365, ¶ 14 (Wyo. 2015). The parties agree that Wyoming has no statutory counterpart to A.R.S. § 12-341.01. And though the management agreement included a provision authorizing attorney's fees awards, the Norton Trust was not a party to that agreement and therefore could not be ordered to pay fees under it. The court's assessment of attorney's fees against the Norton Trust was therefore error, and we vacate it.

        B.      Arizona Law Governs Interest on the Judgment.

¶26        The court applied an annual interest rate of 4.25% pre- and post-judgment to the awards in favor of the Norton Trust based on issue preclusion because the same rate was used in the arbitration decision. The Norton Trust challenges this decision.

¶27　　For issue preclusion to apply, the issue must have been actually raised and submitted for determination in the previous proceedings. *Campbell*, 204 Ariz. at 223, ¶ 9; *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986). Though the defendants contend that the Norton Trust moved unsuccessfully to modify the interest rate in the arbitration proceedings, they do not support that assertion with any citations to the record. Nonetheless, the court properly calculated interest under A.R.S. § 44-1201. The right to interest is procedural, *Dos Picos Land Lt'd P'ship v. Pima County*, 225 Ariz. 458, 465, ¶ 23 (App. 2010), and was therefore governed by Arizona law. *Cardon*, 173 Ariz. at 206. The court's imposition of a 4.25% interest rate complied with A.R.S. § 44-1201(B).

III.　　THE SUPERIOR COURT APPROPRIATELY ALLOWED THE NORTON TRUST TO RECOVER A PORTION OF ITS EXPENSES FROM PJI-2'S AWARD.

¶28　　The parties next dispute the propriety of the superior court's award of expenses, including attorney's fees, to the Norton Trust under A.R.S. § 29-833(A).

¶29　　Though the court should have applied Wyoming law for the reasons set forth above, we need not automatically vacate the award because the relevant portions of the Wyoming and Arizona statutes are functionally identical (and mirrored by Uniform Limited Liability Company Act § 806 (2006)). Under either W.S. § 17-29-906(b) or A.R.S. § 29-833(A), the court may award a wholly or partially successful derivative plaintiff its reasonable expenses, including reasonable attorney's fees, to be paid from the entity's recovery. W.S. § 17-29-906(b); A.R.S. § 29-833(A); *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 401, ¶ 82 (App. 2012).

¶30　　We first consider the defendants' argument on cross-appeal that the Norton Trust was not entitled to recover expenses from PJI-2's recovery. We assume that the defendants assert this argument on PJI-2's behalf in their managerial roles. We reject their contention that the arbitration award's failure to grant such expenses precluded imposition of the award in the litigation. Because there is no evidence in the record that expense-sharing was actually litigated in the arbitration proceedings, issue preclusion does not apply. *See Campbell*, 204 Ariz. at 223, ¶ 9; *Chaney Building Co.*, 148 Ariz. at 573.

¶31　　We also reject the defendants' contention that expense-sharing was inappropriate because the Norton Trust was only partially

successful. Wyoming law authorizes an award if a derivative action is successful "in whole *or in part*." W.S. § 17-29-906(b) (emphasis added). The Norton Trust prevailed on its claims that the defendants received unauthorized finder's and development fees. The Norton Trust's failure to prevail on other claims did not disqualify it from defraying its expenses by sharing in PJI-2's recovery. *See Wallop Canyon Ranch, LLC v. Goodwyn*, 351 P.3d 943, 950-51, ¶¶ 25-32 (Wyo. 2015) (construing analogous statute governing limited partnerships).

¶32 For its part, the Norton Trust contends that the amount of the award was insufficient. The expense-sharing statute is "an application of the equitable common fund doctrine." *See Steer v. Eggleston*, 202 Ariz. 523, 526, ¶ 11 (App. 2002) (construing analogous Arizona statute governing limited partnerships). Aimed at promoting equity and encouraging legitimate claims, it spreads the expense of litigation among the members of the benefited entity. *See Cal X-Tra*, 229 Ariz. at 401, ¶¶ 81-82. Common fund awards may be calculated by a flat-percentage, lodestar, or hybrid approach. *See, e.g., Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994).

¶33 Here, the court apparently utilized a flat-percentage method, awarding the Norton Trust approximately 20% of the principal amount that Ball was ordered to repay PJI-2. We cannot say that the court's method was unreasonable. Nothing in W.S. § 17-29-906(b) prohibits use of a flat-percentage calculation. Further, nothing in the statute requires the court to use a certain percentage or to include pre-judgment interest in the base amount. Though "[t]he benchmark percentage in awarding fees in a common-fund case is 25%, [the percentage is] to be adjusted in accordance with the individual circumstances of each case." John Bourdeau et al., *Federal Procedure* § 20:439 (2016). Here, in view of the Norton Trust's failure to prevail on several of its claims, we discern no reversible error in the court's chosen calculation.

IV. THE SUPERIOR COURT DID NOT ERR BY REFUSING TO REDIRECT PJI-2'S AWARD.

¶34 The Norton Trust next contends that the superior court erred by rejecting its request that PJI-2's recovery be paid into its counsel's trust account. The Norton Trust argues that the court's judgment erroneously left "the wrongdoers" in control of PJI-2's award and its distribution.

¶35 The Norton Trust relies on *Lynch v. Patterson*, 701 P.2d 1126 (Wyo. 1985). In *Lynch*, the trial court awarded judgment on a derivative

claim to the individual shareholder-plaintiff rather than the corporation, and the Wyoming Supreme Court affirmed. *Id.* at 1129-31. The Court held that "[a]s a general rule, recovery in [derivative] actions inures to the corporation rather than to the stockholders as individuals," but "[n]everthless, courts *sometimes* permit pro-rata recovery by individual shareholders to prevent an award from reverting to the wrongdoers who remain in control of the corporation." *Id.* at 1130 (emphasis added). Noting that the director-defendants managed the corporation, that two of them held 70% of the voting stock, and that the family orientation and small number of shareholders made a change in control unlikely, the Court concluded that direct recovery was warranted to avoid the risk that the plaintiff would have to bring a second action to compel the directors to declare a dividend or apply the award to legitimate corporate purposes. *Id.* at 1130-31.

¶36 The result in *Lynch*, as *Lynch* itself recognizes, reflects the exception rather than the rule. "Direct recovery cases are rare . . . and those that exist have been criticized on the grounds that individual recovery impairs the rights of creditors and other shareholders." Daniel S. Kleinberger & Imanta Bergmanis, *Direct vs. Derivative, or "What's a Lawsuit Between Friends in an 'Incorporated Partnership?'"*, 22 Wm. Mitchell L. Rev. 1203, 1224 (1996); *see also Individual Pro Rata Recovery in Stockholders' Derivative Suits*, 69 Harv. L. Rev. 1314 (1956). Here, we perceive no exceptional circumstances that would require diversion of PJI-2's award. Ball is a minority shareholder in PJI-2. The mere fact that he is PJI-2's manager and the person liable for the award cannot, by itself, compel divesting PJI-2 of the award. The superior court did not err by declining the Norton Trust's request to order that the award be paid into its counsel's trust account.

V.    THE SUPERIOR COURT DID NOT ERR BY CONCLUDING THAT IT LACKED JURISDICTION TO DISSOLVE PJI-2.

¶37 The Norton Trust finally contends that the superior court erred by concluding that it lacked jurisdiction to dissolve PJI-2.

¶38 In *Spurlock v. Santa Fe Pac. R. Co.*, we held:

The respective supremacies of the state and national governments in their particular spheres must be observed in regard to their power to create and destroy corporations. Neither may terminate the existence of a corporation of the other. Therefore, no court can declare a forfeiture of

> franchise or dissolution of a corporation except the courts of the jurisdiction which created it.

143 Ariz. 469, 482 (App. 1984) (internal quotation marks omitted); *accord MHS Venture Mgmt. Corp. v. Utilisave, LLC*, 63 A.D.3d 840, 841 (N.Y. Apr. Div. 2009).

¶39 The Norton Trust argues that we should now adopt what it terms the "modern view," as set forth in the Restatement (Second) of Conflict of Laws. The Norton Trust cites § 313, comment c, of the Restatement, which provides that "when the corporation is only technically a foreign corporation, since all, or the great majority, of its contacts, other than the place of its incorporation, are in the state of the forum, the courts will even entertain actions which call for relief affecting the corporation's organic structure or internal administration." The balance of that comment gives as examples "action[s] which question[ ] the validity of a stock issue or of a dividend or which seek[ ] to enjoin a proposed reorganization of the corporation or to require the calling of a shareholders' meeting."

¶40 Nothing in comment c to § 313, or in § 313 itself, specifically addresses the question of jurisdiction to order a foreign company's dissolution. Moreover, comment c to § 299 specifically provides: "While *a state may not terminate or suspend the existence of a foreign corporation*, it may, in the absence of constitutional prohibition, forbid a foreign corporation to do business within its territory and may wind up the corporation's affairs there." (Emphasis added.) The Restatement therefore actually contradicts the Norton Trust's arguments, and we are unpersuaded by the Norton Trust's citation to cases from other jurisdictions. The superior court did not err by determining that it lacked jurisdiction to dissolve PJI-2.

## CONCLUSION

¶41 We vacate the portion of the judgment awarding attorney's fees to the defendants. We otherwise affirm. We deny the defendants' request for attorney's fees on appeal.

