NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TIMOTHY DONALD, et al., *Plaintiffs/Appellants*,

*v.*

KYLE ENG, et al., *Defendants/Appellees*.

No. 1 CA-CV 20-0230
FILED 4-22-2021

Appeal from the Superior Court in Maricopa County
No.  CV2017-001526
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Stoops, Denious, Wilson & Murray, P.L.C., Phoenix
By Frank L. Murray, Stephanie M. Wilson, Thomas A. Stoops
*Counsel for Plaintiffs/Appellants*

Gallagher & Kennedy P.A., Phoenix
By Mark C. Dangerfield, Michael K. Kennedy
*Counsel for Defendants/Appellees*

_____

## MEMORANDUM DECISION

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maria Elena Cruz joined.

_____

**P E R K I N S**, Judge:

¶1             Timothy Donald and American Soccer Marketing, L.L.C. ("ASM") (collectively "Donald") appeal the entry of summary judgment for Kyle Eng. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2             Donald is the sole shareholder of ASM, which owned a United Soccer League ("USL") soccer franchise. Donald signed the franchise agreement on behalf of ASM and as a guarantor of ASM's obligations.

¶3             After acquiring the USL franchise, Donald began looking for other investors. He negotiated with three different investor groups: Eng, Berke Bakay, and a Brazilian group. Donald and Eng began talks in late January 2014. Under the franchise agreement, USL had to approve any joint-owner or investor.

¶4             Donald claims he and Eng tentatively agreed to a 50-50 partnership and that he sent Eng a draft operating agreement to that effect in late January 2014. Then Eng met with USL officers at USL headquarters in Florida on February 7, 2014, to learn more about the franchise. After the meeting, Eng emailed the USL officers, stating the agreement with Donald did not "make sense in its current form" without Eng having "a controlling interest" in the franchise.

¶5             Donald and Eng met again on February 10, 2014. And according to Donald, they reached a "handshake deal" granting Eng a 51% ownership interest. On February 13, 2014, Eng told Donald he decided not to proceed with the partnership.

¶6             The USL franchise agreement required ASM to pay a performance security of $50,000. When Donald took over the franchise, he owed a performance security balance of $25,194.47. USL sent Donald a default notice on February 14, 2014, stating the default triggered grounds for immediate termination of the franchise agreement. But USL gave

Donald seven days to cure the default. Donald did not pay the balance within seven days, and USL terminated the franchise. Eng met with the officers on February 24, 2014 and USL awarded him the franchise on March 13, 2014.

¶7            In February 2017, Donald sued USL; two USL officers, Alec Papadakis and Tim Holt (collectively "USL Defendants"); and Eng. Donald asserted claims against all defendants for fraud, promissory estoppel, interference with contractual relations or business expectancy, and breach of fiduciary duty. Donald also alleged the USL Defendants breached the franchise agreement by terminating the franchise. Because the franchise agreement contained a mandatory arbitration clause, the court dismissed the claims against the USL Defendants. This appeal does not involve that dismissal. *See Donald v. Papadakis*, 1 CA-CV 17-0728, 2018 WL 4688224 (Ariz. App. Sept. 27, 2018) (mem. decision) (affirming dismissal of all claims against USL Defendants).

¶8            In April 2018, arbitration commenced in Florida. The arbitration panel found Donald's failure to pay the performance security balance amounted to a material breach, justifying USL's termination of the franchise agreement, so USL did not breach the agreement. The arbitration panel denied all other claims against the USL Defendants in an earlier ruling. The arbitration award ordered ASM and Donald to pay the cost of arbitration and the USL Defendants' attorneys' fees and costs.

¶9            During the arbitration proceedings, the superior court dismissed Donald's claims for interference with contractual relations or business expectancy and breach of fiduciary duty. Donald does not challenge that ruling on appeal. After the arbitration award, Eng moved for summary judgment on the promissory estoppel and fraud claims. He argued Donald was collaterally estopped from litigating these claims because the alleged damages resulted from the termination of the franchise agreement, which the arbitration panel found lawful. Eng also argued that Donald failed to prove the elements of promissory estoppel and fraud. Donald responded, arguing the arbitration award had no preclusive effect and that questions of fact remained.

¶10            The superior court entered summary judgment in Eng's favor, finding that based on the arbitration award, Donald could not prove that Eng caused any damages from the loss of the franchise. Donald moved for reconsideration. At that time, the arbitration award remained pending in the Florida federal district court, so the parties agreed that Eng would file a response after the district court issued its ruling.

¶11 After several months, the district court confirmed the arbitration award but concluded that because Donald was not a party to the franchise agreement in his individual capacity, he could not be held personally liable for the arbitration fees and costs. Donald responded by filing a "supplement to response to motion for summary judgment in light of Florida district court and opposition to fee petition under A.R.S. § 12-349" with several hundred pages of exhibits (collectively "Supplemental Pleading"). Responding to the motion for reconsideration, Eng moved to strike Donald's Supplemental Pleading. The court struck the Supplemental Pleading but granted oral argument to address the recent district court ruling.

¶12 After oral argument, the superior court affirmed the summary judgment and entered a final judgment on March 3, 2020. Donald timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶13 Summary judgment is appropriate "if the facts produced in support of the claim or defense have so little probative value . . . that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990); *see also* Ariz. R. Civ. P. 56(a). We review the superior court's decision to grant summary judgment *de novo*, considering the facts and any inferences drawn from those facts in the light most favorable to Donald. *See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15 (App. 2007).

## I. Donald's Response to the Motion for Reconsideration

¶14 After Donald moved for reconsideration, the parties agreed that Eng would submit his response once the district court ruled in the arbitration case. But after the district court ruled, Donald replied by filing a "Supplement To Response to Motion for Summary Judgment," which the court struck. Donald contends the court abused its discretion because Eng got the last word and Donald did not get to submit anything in writing to address the district court ruling. We review the court's ruling on a motion to strike for an abuse of discretion. *Dowling v. Stapley*, 221 Ariz. 251, 266, ¶ 45 (App. 2009).

¶15 The superior court noted that a reply in support of a motion for reconsideration is impermissible. Given that rule and "the unique circumstances regarding the timing" of the motion for reconsideration and response, the court granted oral argument on the motion for

4

reconsideration so Donald could address the district court ruling. This oral argument provided Donald with adequate opportunity to address the district court ruling and Eng's response. The record does not support Donald's assertion that the court cut the oral argument short. And Donald's response went beyond explaining the relevance of the district court ruling to the collateral estoppel issue. Donald also filed two responses to the motion to strike, both of which asserted the summary judgment ruling could not stand given the district court's ruling. He had ample opportunity to address the district court ruling. We thus affirm the superior court's order striking Donald's response to his motion for reconsideration.

## II.        **Collateral Estoppel**

¶16        The arbitration award concluded USL lawfully terminated the franchise agreement after Donald failed to cure the default. Based on this ruling, the superior court determined collateral estoppel precluded Donald from arguing that Eng's actions caused USL to terminate the franchise agreement. Donald argues the court erred because the arbitration case involved different facts, law, and parties.

> Collateral estoppel, or issue preclusion, binds a party to a decision on an issue litigated in a previous lawsuit if . . . (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is a common identity of the parties.

*Campbell v. SZL Props. Ltd.*, 204 Ariz. 221, 223, ¶ 9 (App. 2003). We review the court's application of collateral estoppel *de novo. Id.* at ¶ 8.

### A.  *Issues Actually Litigated*

¶17        The arbitration addressed Donald's claim that USL wrongfully terminated the franchise agreement. In the superior court, Donald asserted claims against Eng for fraud and promissory estoppel. Donald argues that collateral estoppel does not apply because the two proceedings involved different claims, and because the arbitration panel disregarded Eng's conduct in causing USL's breach.

**¶18**        The different claims do not preclude collateral estoppel because the parties litigated the same issues. Donald's fraud and promissory estoppel claims stem from Eng's conduct that allegedly caused USL to unlawfully terminate the franchise agreement. To succeed, Donald had to prove an unlawful termination. The parties litigated that issue during arbitration, and the arbitration panel determined that USL lawfully terminated the franchise agreement because Donald materially breached the agreement by failing to pay the performance security. Donald does not allege that Eng caused his failure to pay the performance security. Eng's actions therefore could not have caused Donald to suffer any losses because the franchise termination was not unlawful, and Eng was not the proximate cause of the alleged losses. *See Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546 (1990) ("The proximate cause of an injury is that which . . . produces an injury, and without which the injury would not have occurred.").

**¶19**        Donald contends the arbitration panel ignored Eng's conduct. During arbitration, Donald claimed he defaulted on the franchise agreement because of mistaken dates in the agreement, not based on his failure to pay the performance security. In concluding that Donald owed the performance security, and reforming the agreement based on mutual mistake, the arbitration panel found evidence that: (1) Donald knew he owed the performance security; (2) USL sought to enforce the performance security requirement through reminders; and (3) absent the payment, USL could default the franchise. USL demonstrated its intent to enforce the performance security requirement before Eng's alleged dates of interference, and Donald demonstrated his anticipation that he needed to make that payment. Based on these findings, Donald cannot show that Eng's conduct proximately caused USL's enforcement. *See id.* These findings also show Donald fully litigated the breach issue, satisfying collateral estoppel.

**¶20**        Donald also argues that he sought damages unrelated to the franchise termination and that those damages were not litigated during arbitration. Donald claims Eng requested Donald's attorney to draft an operating agreement, causing Donald to incur "tens of thousands of dollars" in fees.

**¶21**        Eng contends that Donald waived this argument by raising it for the first time in his motion for reconsideration. But in his response to Eng's motion for summary judgment, Donald argued these damages were different from those sought in the arbitration. Donald thus did not waive the argument about the attorneys' fees. Donald did, however, allege for the

first time in the motion for reconsideration that he hired employees and leased space. We therefore do not address Donald's arguments relating to those damages. *See Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240, ¶ 15 (App. 2006) (appellate courts generally do not consider arguments raised for the first time in a motion for reconsideration).

**¶22** The evidence Donald cites does not create a question of fact sufficient to preclude summary judgment. Donald claims Eng directed him to prepare a formal agreement on February 10, 2014, and "urged" Donald to pay for these documents. Donald also claims that "changes were made" on February 11, 2014, costing "tens of thousands of dollars[.]" But Donald makes these claims with no supporting evidence. "Self-serving assertions without factual support in the record will not defeat a motion for summary judgment." *Florez v. Sargeant*, 185 Ariz. 521, 526 (1996) (quoting *Jones v. Merchs. Nat. Bank & Tr. Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994)).

**¶23** Eng offered contrary evidence to Donald's assertions. According to an email that Eng provided, Donald sent the operating agreement to Eng on January 29, 2014 — well before the February 10, 2014 "handshake agreement" that prompted the alleged damages. On February 11, 2014, Donald emailed to ask Eng if Donald's attorney, Connie Mabelson, should provide the revised agreements to Eng's attorney. Before Eng responded, Donald texted him that Mabelson would send the revised agreement to Eng's attorney. This all occurred before Eng ever confirmed that he wanted Donald's attorney to do so. Although Donald contends there may have been other forms of communication, he fails to cite to any such evidence before the court.

**¶24** Donald's damage reports similarly fail to support these alleged damages. The reports include the cash flow Donald anticipated receiving if he kept the franchise, and listed Donald's cash investment as another component of damages. To support the cash investment calculation, the reports referred to a list of Donald's expenses, but the list included only one $66 expense from February 11, 2014, the date Donald's attorney prepared the documents allegedly at Eng's urging. The court properly struck any evidence from the Supplemental Pleadings. *See supra* ¶¶ 15–16. Based on this record, no reasonable juror could conclude that Eng proximately caused Donald to incur thousands of dollars in attorneys' fees. *See Orme Sch.*, 166 Ariz. at 309.

**¶25** Donald argues that the lack of damages does not preclude summary judgment because he need only prove a detriment to state a promissory estoppel claim. This misstates the law. To state a claim for

promissory estoppel, Donald "must show that [Eng] made a promise[,] should have reasonably foreseen that [Donald] would rely on that promise[,]" and that Donald actually relied on that promise to his detriment. *See State ex rel. Romley v. Gaines*, 205 Ariz. 138, 143, ¶ 15 (App. 2003); *see also* Restatement (Second) of Contracts § 90 (1981). The detriment must be actual, not "merely formal." *Weiner v. Romley*, 94 Ariz. 40, 44 (1963). A detriment alone is therefore insufficient. "His condition must be such that, if the estoppel be not permitted, he will suffer damage." *Id.* at 44 (quoting *State ex rel. McKittrick v. Mo. Utils. Co.*, 96 S.W. 2d 607, 615 (Mo. 1936)). Donald showed no such damages.

### B. Differences in Applicable Law

**¶26**        Donald also contends he did not receive a full and fair opportunity to litigate the fraud claim against Eng because the arbitration applied Florida law, which requires proof of fraud in the performance of the contract, rather than Arizona law, which requires proof of fraud in the inducement. But both jurisdictions require proof of damages in a fraud case. *See Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 77, ¶ 18 (App. 1998) (a fraud claim requires a "consequent and proximate injury"); *see also La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 713 (Fla. Dist. Ct. App. 1998) (a fraud claim requires damages because of fraud that are separate from any breach of contract damages). As discussed above, Donald failed to show Eng proximately caused any damages. The difference in the fraud elements does not warrant reversal of the summary judgment.

### C. Common Parties

**¶27**        Next, Donald argues there were no common parties because Eng did not participate in the arbitration. But Arizona law allows the use of defensive collateral estoppel if the other elements are met. *Campbell*, 204 Ariz. at 223, ¶ 10. That Eng was not a party does not prevent him from asserting collateral estoppel defensively. *See id.*

**¶28**        Donald also argues there were no common parties because he was not personally a party to the franchise agreement. The district court ruled that Donald was not a party to the franchise agreement and lacked standing to seek damages against USL. The court therefore concluded Donald was not personally liable for attorneys' fees and vacated that portion of the arbitration award. Based on this ruling, Donald contends there was not a common identity of parties. We disagree.

**¶29**        Collateral estoppel applies to the same parties or "persons in privity with parties." *Scottsdale Mem'l Health Sys., Inc. v. Clark*, 157 Ariz. 461,

466 (1988). "Finding privity between a party and a non-party requires both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." *Hall v. Lalli*, 194 Ariz. 54, 57, ¶ 8 (1999) (quoting *Phinisee v. Rogers*, 582 N.W. 2d 852, 854 (Mich. Ct. App. 1998)). First, Donald was a party to the arbitration case despite the district court's finding that he was not personally liable for the fees and costs. And Donald was in privity with ASM. As ASM's sole shareholder, Donald and ASM had a "substantial identity of interests" and a "working relationship" so that Donald's interests were fully represented in the arbitration case. We affirm the grant of summary judgment.

### III.        Donald's Request to Take Additional Depositions

**¶30**        Donald asked the superior court to extend the discovery deadline so he could depose three non-party witnesses to determine how much money Eng received when he surrendered the USL franchise. Eng objected, as did all three witnesses, and the court denied Donald's request without comment. We review the court's rulings on disclosure and discovery matters for an abuse of discretion. *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013).

**¶31**        Donald contends these depositions were necessary because Eng testified that he did not know how much money he received when he sold the franchise to third parties. This evidence was relevant to prove damages related to the loss of the franchise. As discussed above, Donald is collaterally estopped from arguing that Eng caused those damages. Any evidence Donald might have discovered from these witnesses is therefore immaterial. We affirm the denial of Donald's request to depose these witnesses.

### CONCLUSION

**¶32**        We affirm the judgment and award Eng his reasonable costs on appeal under A.R.S. § 12-342.

