In re Adam W. CHILD, Debtor.

Adam W. Child, Appellant,

v.

Foxboro Ranch Estates, LLC, Appellee.

BAP No. AZ–11–1496–HlDJu.
Bankruptcy No. 09–15935–GBN.
Adversary No. 09–01732–GBN.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 20, 2012.

Decided Feb. 1, 2013.

Michael G. Tafoya, Esq., of Law Office of Michael G. Tafoya, argued for Appellant; James M. McGuire, Esq., of Davis Miles McGuire Gardner, PLLC, argued for Appellee.

Before: HOULE [1], DUNN and JURY, Bankruptcy Judges.

## OPINION

HOULE, Bankruptcy Judge.

Adam W. Child ("Child") has appealed a bankruptcy court summary judgment finding a debt nondischargeable in favor of Foxboro Ranch Estates, LLC ("Foxboro"). Child contends that the bankruptcy court erred by giving preclusive effect to an Arizona judgment in favor of Foxboro, arguing that the minimal nature and extent of his participation in the superior court action was not sufficient under Arizona law to allow application of issue preclusion. We agree and REVERSE the summary judgment and REMAND for further proceedings in accordance with this Opinion.

---

1. Hon. Mark D. Houle, Bankruptcy Judge for the Central District of California, sitting by designation.

## I. FACTS

During early summer 2006, Foxboro entered into several agreements with High Country Investors, LLC ("High Country"), an entity owned and controlled by Child, pursuant to which Foxboro agreed to sell two lots in a real property development to High Country. Foxboro subsequently sued Child and his wife in Superior Court of Arizona, Coconino County ("Superior Court"), asserting, inter alia, claims for fraud in connection with the real property purchase agreements ("Superior Court Action"). The procedural time line of the litigation was as follows:

- On August 10, 2007, Foxboro filed its civil complaint;
- On December 24, 2008, Foxboro filed a motion to amend the complaint to add Child's father as a defendant;
- On February 13, 2009, Foxboro filed its amended complaint, which added Child's father as a defendant. At no time did Child file an answer to the original or amended complaint;
- On February 23, 2009, Foxboro filed its motion for summary judgment against Child;
- On March 31, 2009, Foxboro filed a request for summary disposition of the motion for summary judgment; and
- On June 8, 2009, the Superior Court granted the motion for summary judgment and entered judgment, including detailed and specific findings of fact, against Child for breach of contract, fraud and racketeering ("Arizona Judgment"). The Arizona Judgment awarded damages against Child in the amount of approximately $3,000,000.

Child's participation in the Superior Court Action was limited. Prior to entry of the Arizona Judgment, Child made only four appearances before the Superior Court, each for a case management conference, over a period of approximately fourteen months. First, at a March 17, 2008 case management conference, Child appeared through counsel, who represented to the court that the parties had agreed to a mediator and projected the mediation to take place in April. On October 27, 2008, at the second case management conference attended by Child, this time (and at all subsequent times) on his own behalf, Child indicated that he had retained bankruptcy counsel, but would still try to coordinate with Foxboro's counsel regarding mediation. At a third court conference on March 16, 2009, Child acknowledged receipt of Foxboro's motion for summary judgment, indicated that he did "need to respond to quite a few of the allegations still," and inquired further as to what the time line was on the motion for summary judgment. At the same conference, he also stated that he "just completed the process last week of arranging enough money for Larry Hirsch to proceed with [his] bankruptcy," and that he expected "the filing of that to take place sometime next week." The Superior Court then continued the conference for sixty days in light of a possible bankruptcy filing. Finally, Child appeared at a fourth case management conference on May 18, 2009, but without any apparent meaningful involvement.[2]

In addition to his four appearances at case management conferences, in response to Foxboro's motion to amend, Child sent a six-page letter to the Superior Court dated January 10, 2009, in which he disputed Foxboro's claims in the Superior Court Action and generally attempted to rechar-

---

2. Child also personally appeared, for reasons unclear from the record, at four case management conferences *after* entry of the Arizona judgment and his bankruptcy filing: on July 21, 2009, September 1, 2009, November 2, 2009, and January 4, 2010.

acterize the nature of the transactions between the parties in his favor, but in which he also restated his intention to file bankruptcy.

These aforementioned activities were the full extent of Child's participation in the Superior Court Action. On the other hand, it is uncontested that during the Superior Court Action, Child did not (i) file an answer or responsive pleading to either the original complaint or the amended complaint, (ii) file an opposition to the motion to amend the complaint (other than the January 10, 2009 letter to the Superior Court, to the extent that it could be deemed an opposition), (iii) conduct or otherwise participate in discovery, (iv) oppose Foxboro's motion for summary judgment, or (v) appeal the Arizona judgment. Importantly, as noted above, Child also repeatedly referenced his intent to file bankruptcy during several of the case management conferences and in his January 10, 2009 letter.

On July 9, 2009, Child filed a chapter 7 voluntary petition in the United States Bankruptcy Court for the District of Arizona. Child's Schedule F listed Foxboro's litigation claim in the amount of $1,000,000.

On December 23, 2009, Foxboro filed a timely adversary complaint in the bankruptcy court pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6) to except the Arizona Judgment from discharge, which Debtor answered on September 10, 2010.[3] On October 22, 2010, Foxboro filed a motion for summary judgment, arguing that the Arizona Judgment should be given preclusive effect. After briefing by the parties, at the initial hearing on January 7, 2011, the bankruptcy court acknowledged the difficulty in giving issue preclusive effect to the Arizona Judgment based on the

level of Child's participation in the Superior Court Action. The bankruptcy court ultimately continued the hearing to allow Foxboro additional time to supplement the record regarding the full extent of Child's participation in the Superior Court Action. On February 28, 2011, Foxboro filed a supplement to the record, which included a transcript from the March 16, 2009 state court case management conference.

On May 24, 2011 the bankruptcy court held a continued hearing on the motion for summary judgment. During the hearing the bankruptcy court determined that the Arizona Judgment would be given preclusive effect, based in part on Child's repeated statements that he would file bankruptcy, and the court stated in relevant part that "the Debtor had an opportunity to litigate which he chose not to take." On August 29, 2011, the bankruptcy court entered a judgment excepting the Arizona Judgment from discharge pursuant to § 523(a)(2)(A), (a)(4), and (a)(6).

On September 9, 2011, Child filed a timely notice of appeal to this Panel.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

In granting summary judgment, did the bankruptcy court err in finding that the Arizona Judgment satisfied the elements of issue preclusion under Arizona law.

## IV. STANDARDS OF REVIEW

■ A grant of a motion for summary judgment is reviewed de novo. *Younie v.*

---

**3.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

*Gonya (In re Younie)*, 211 B.R. 367, 372 (9th Cir. BAP 1997) (citing *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir.1995)). The Panel must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact, and if the trial court correctly applied the relevant law. Rule 7056; Fed.R.Civ.P. 56(c); *Younie*, 211 B.R. at 372 (citing *Silva v. Smith's Pac. Shrimp, Inc. (In re Silva)*, 190 B.R. 889, 891 (9th Cir. BAP 1995)).

■ We review whether issue preclusion was properly applied de novo. *Silva*, 190 B.R. at 892.

## V. DISCUSSION

### Issue Preclusion; Choice of Law

■ The doctrine of issue preclusion, or collateral estoppel, prohibits relitigation of issues that have been adjudicated in a prior action.[4] *Kirkland v. Barnes (In re Kirkland)*, 2008 WL 8444824, at *7 (9th Cir. BAP Nov. 26, 2008) (citing *Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 104 (9th Cir. BAP 2007)). The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal the controlling facts and the exact issues litigated. *Kirkland*, 2008 WL 8444824, at *7 (citing *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995)).

■ Issue preclusion applies in dischargeability proceedings. *Grogan v. Gar-*

4. Although the bankruptcy court and the parties refer to the collateral estoppel effect of the state court's rulings, the Supreme Court now generally uses the term "issue preclusion" instead of "collateral estoppel." *Taylor v. Sturgell*, 553 U.S. 880, 892 n. 5, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) ("issue preclu-

*ner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The rules of federal and state comity require that federal courts give prior state judgments the same preclusive effect as the courts of the state court that rendered the judgment. 28 U.S.C. § 1738 (2012). As a matter of full faith and credit, a federal court must determine the preclusive effect of a prior state court judgment by applying the issue preclusion law of the state of the court that rendered the prior judgment. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. at 81, 104 S.Ct. 892; *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir.2001); *Branam v. Crowder (In re Branam)*, 226 B.R. 45, 51 (9th Cir. BAP 1998); *In re Nourbakhsh*, 67 F.3d at 800 (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)).

### Elements of Issue Preclusion under Arizona Law

■ The seminal decision setting forth the state law elements of issue preclusion under Arizona law is the Arizona Supreme Court decision of *Chaney Building Co. v. City of Tucson*, 148 Ariz. 571, 716 P.2d 28, 30 (1986), which states that issue preclusion is applicable when:

(1) the issue or fact to be litigated **was actually litigated** in a previous suit,

(2) a final judgment was entered, and

(3) the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter,

(4) **and actually did litigate it,** [and]

sion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel' ") (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)); *see also Paine v. Griffin (In re Paine)*, 283 B.R. 33, 38 (9th Cir. BAP 2002).

(5) such issue or fact was essential to the prior judgment.

*Id.* at 30 (numbering and emphasis added).[5]

 With respect to element (1) of the *Chaney* factors, comment d of the RE-STATEMENT (SECOND) OF JUDGMENTS § 27 (1982), cited in the *Chaney* decision, provides that:

> When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section.... A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof.

Logically, in the case of a judgment entered by confession, consent or default, none of the issues are actually litigated (for purposes of element (1)), and thus those situations are inappropriate for application of issue preclusion. *Chaney*, 716 P.2d at 30 (citing comment d of the RE-STATEMENT (SECOND) OF JUDGMENTS § 27 (1982)).

 In contrast to element (1), element (4) of the *Chaney* factors looks to whether, when having the full opportunity to litigate the matter, the party actually did litigate by *participating* to some substantial degree in the matter. *See In re Kirkland*, 2008 WL 8444824, at *5. As discussed below, on this record, Child's participation in the Superior Court Action does not satisfy element (4). As such, we do not reach the question of whether the issues underlying the bankruptcy court's summary judgment were actually litigated in the Superior Court Action for purposes of element (1).

By way of background, there is some inconsistency and overlap in the application of elements (1) and (4) within the state and federal cases applying Arizona issue preclusion law after the *Chaney* decision, likely because the descriptions of those two elements are confusingly similar. In fact, cases reciting the elements of issue preclusion under Arizona law have evolved along two distinct branches after the *Chaney* decision.

The first line of cases expressly includes element (4)—that the party against whom the doctrine is to be invoked actually did litigate it—within the *Chaney* elements. *See, e.g., Hovdestad v. Ward (In re Ward),* 1994 WL 134682, at *3 (9th Cir. April 14, 1994); *Bell v. Bell (In re Bell),* 2008 WL 2277875, at *2 (D.Ariz. May 30, 2008); *Ralph Wilkens Co., Inc. v. Dykes (In re Dykes),* 2007 WL 1187967, at *1 (Bankr. D.Ariz. April 20, 2007); *Bridgestone/Firestone N. Am. Tire, L.L.C. v. Naranjo,* 206 Ariz. 447, 79 P.3d 1206, 1211 (Ct.App. 2003); *Bigelsen v. Arizona State Bd. of Med. Exam'rs,* 175 Ariz. 86, 853 P.2d 1133, 1138 (Ct.App.1993).

At the same time, another line of case law has developed which does not include element (4) when stating the requisite elements of issue preclusion. *See, e.g., Dzurissin v. Taylor (In re Taylor),* 2011 WL 6217354, at *2 (Bankr.D.Ariz. Dec. 14, 2011); *Baier v. Mayer Unified Sch. Dist.,* 224 Ariz. 433, 232 P.3d 747, 753 (Ct.App. 2010); *Campbell v. SZL Properties, Ltd.,* 204 Ariz. 221, 62 P.3d 966, 968 (Ct.App. 2003); *Garcia v. General Motors Corp.,* 195 Ariz. 510, 990 P.2d 1069, 1073 (Ct.App. 1999); *Aldabbagh v. Ariz. Dept. of Liquor Licenses & Control,* 162 Ariz. 415, 783 P.2d 1207, 1210 (Ct.App.1989); *Gilbert v. Bd. of*

---

**5.** Some decisions have included in element (3) a requirement that the party against which issue preclusion is sought also had motive to litigate the issue. *See, e.g., Campbell v. SZL Properties, Ltd.,* 204 Ariz. 221, 62 P.3d 966, 968 (Ct.App.2003).

*Med. Exam'rs,* 155 Ariz. 169, 745 P.2d 617, 622 (Ct.App.1987).

The case law does not discuss or otherwise note this somewhat curious inconsistency. The second line of cases springs primarily from the 1987 *Gilbert* decision, which cites to *Chaney* for the issue preclusion elements but deletes, without explanation, element (4) from the list of necessary elements.

Regardless, *Chaney* is a decision by the Arizona Supreme Court and thus remains good law as to the elements of issue preclusion under Arizona law. Accordingly, a showing that element (4) is satisfied remains a necessary requirement for application of issue preclusion under Arizona law.

**Requirement of Substantial Participation**

 Cases evaluating whether a party actively participated in litigation (element (4)), for purposes of issue preclusion, consider the nature and extent of participation in the litigation by the party against whom issue preclusion is to be invoked. *See, e.g., In re Kirkland,* 2008 WL 8444824, at *7–11; *In re Bell,* 2008 WL 2277875, at *2. This includes looking to various factors such as whether a party (i) answers the complaint, (ii) files pleadings such as motions or oppositions, (iii) appears and participates at hearings, conferences and trials, (iv) engages in discovery, and (v) is represented by counsel. *See id.*

For example, in *Kirkland,* in reviewing a bankruptcy court's application of issue preclusion to an Arizona judgment, this Panel considered the debtors' participation in a state court action and found that the debtor "had a full and fair opportunity to litigate, *and actually did litigate.*" *Kirk-*

*land,* 2008 WL 8444824, at *11 (emphasis added). The *Kirkland* decision described the debtor's participation as follows:

> It is also apparent from the record that Kirkland had a full and fair opportunity to litigate in the State Court. Over the course of several years, he answered the complaint, he filed various substantive motions, and he engaged in the discovery process (albeit not cooperatively or productively). He apparently took the deposition of Barnes, and eventually (at least partially) produced documents. He also testified at evidentiary hearings, and he appealed the Judgment.

*Id.* at *8; *see also In re Ward,* 1994 WL 134682, at *1, *3 (concluding that declaratory judgment satisfied "actually litigated" requirement where party had litigated the issue fully before the superior court (including a three-week trial) and appealed the issue to the court of appeals); *Bigelsen,* 853 P.2d at 1133 (concluding that the Board of Medical Examiners was not bound by the decision of the prior adjudicating body where it had not taken part in the adjudicating body's consideration of the issues).[6]

Similarly, in *In re Bell,* 2008 WL 2277875, at *4, the Arizona district court found issue preclusion available where the state court granted a motion for summary judgment in part based on the extent of debtors' participation in the underlying state court action, including the facts that debtors filed an answer, took part in an evidentiary hearing, produced documents, filed untimely responses to the motion for summary judgment, and were represented by counsel. In this regard the *Bell* court stated that:

> plaintiff in first action did in fact litigate issue of damages resulting from accident where plaintiff pursued and presented evidence on all damages as part of seven-day trial).

---

**6.** This analysis is equally applicable if the party against whom issue preclusion is sought was the plaintiff in the underlying action. *See Naranjo,* 79 P.3d at 1211 (concluding that

Appellants actually litigated the state court proceeding. They participated in the superior court case, attended hearings, were represented by counsel, were fully aware of Appellee's motion for summary judgment, and had a fair opportunity under Arizona procedures to contest the motion. They also participated fully in the bankruptcy court proceeding and even opposed the lift-stay motion that allowed the state court action and the summary judgment motion to proceed. The state court order is not akin to a default judgment. The court entered a detailed summary judgment order on the merits of the case, in a contested proceeding, where Appellants participated and were represented by counsel. Collateral estoppel is proper. *Id.* at \*5.

### Application to Instant Case

 Although there does not appear to be reported (or published) case law setting forth a minimum level of participation needed to satisfy element (4) under Arizona law, the facts of this case fall below the level of participation that has been found in other cases to satisfy element (4).

In this case Debtor's only "filing" was a rambling letter to the court disputing the claims against him but including the assertion he would file bankruptcy. Also, the record shows that Child did not file an answer, conduct discovery, or even file an opposition to the summary judgment motion.[7] Similarly, Child's attendance at four case management conferences was not participation in any meaningful sense, primarily given his repeated assertions of intent to file bankruptcy and his limited comments at the conferences. Perhaps Child intended these actions as an attempt somehow to defend against or delay the Superior Court Action, but they cannot be

objectively viewed as participation in a sufficiently meaningful or substantive way beyond his physical presence.

In essence, the totality of Child's participation in the Superior Court Action consists of his efforts to (i) monitor the litigation, (ii) convey his disagreement, uncertainty or confusion with the claims asserted against him, and (iii) indicate his intention to file bankruptcy. While some of his statements appear to have caused the court to continue the case management conferences and perhaps also caused Foxboro to delay moving for summary judgment, there is no showing that Child took any action deliberately to frustrate Foxboro's efforts, nor is there any legitimate reason contained in the record why Foxboro could not have sought a default judgment against Child. In other words, Child never presented any substantive or meaningful defense in the Superior Court Action.

Moreover, element (4) of the *Chaney* factors logically precludes application of issue preclusion if a party, having the opportunity to litigate, willingly chooses not to participate in litigation. *See Chaney,* 716 P.2d at 30. This interpretation is consistent with Arizona law that precludes a default judgment from serving as the basis for issue preclusion, as a default judgment is identical for all practical purposes to the situation, such as here, where a defendant does not answer or otherwise offer a defense and the plaintiff prevails on an unopposed summary judgment motion rather than seeking a default judgment. *Id.*

On this point, the bankruptcy court's reliance on *Bell,* 2008 WL 2277875; *Silva,* 190 B.R. 889; *IRS v. Palmer (In re Palmer),* 207 F.3d 566 (9th Cir.2000); and *U.S. v. Gottheiner (In re Gottheiner),* 703 F.2d 1136 (9th Cir.1983), in support of its con-

---

**7.** The record indicates that summary judg- ment was granted without a hearing.

clusion as to the sufficiency of Child's level of participation and the characterization of Child choosing not to participate in the litigation, is misplaced. First, with the exception of *Bell,* those cases were decided under federal issue preclusion law, not Arizona issue preclusion law. We disagree with statements in *Garcia* and *Kirkland* that federal and state issue preclusion law are effectively the same, as that position appears to have been reached summarily and without reliance on or citation to Arizona law. *See Garcia,* 990 P.2d at 1073 ("federal elements [for issue preclusion are] virtually the same [as state law elements]"); *Kirkland,* 2008 WL 8444824, at *9 ("First, there is little practical difference between state law and federal law on the analysis of whether an issue has been actually litigated.").

To the contrary, federal issue preclusion law does not include the express independent requirement under Arizona law of a party's actual participation (element (4)).[8] *Cf. Younie,* 211 B.R. at 374 (declining to find dispositive cases in which the elements of federal collateral estoppel law were inconsistent with requirements of state collateral estoppel law). In *Younie,* the Panel refused to adopt case law analysis of the active participation element of federal collateral estoppel law where governing California collateral estoppel law allowed a default judgment to satisfy the "actually litigated" element. *Id.* at 374.

Second, as to *Bell* and *Kirkland,* while we are persuaded by the analysis in those decisions regarding whether a party actively participated in litigation under Arizona law (as noted above), those decisions are based in part on sanctionable or other wrongful conduct by the defendants, which is a concept of federal issue preclusion law that has no support under Arizona law.[9] *Bell,* 2008 WL 2277875, at *4 ("The state court sanctioned Appellants for, among other things, failing to provide a sworn statement pursuant to the court's order, failing to be 'forthcoming with providing information about the estate of Jennie Maye Bell,' providing testimony at an evidentiary hearing that was 'evasive, contradictory . . . , and lacking of credibility and candor,' and engaging in behavior that was 'evasive and dilatory[.]' ") (citing *Fed. Deposit Ins. Corp. v. Daily (In re Daily),* 47 F.3d 365, 368 (9th Cir.1995)); *Kirkland,* 2008 WL 8444824, at *5 (default judgment entered where defendant "had his answer stricken as a sanction for his contemptuous behavior and discovery violations").

That concept is embodied in the judicial exception to the general rule of federal issue preclusion law (and of certain states) that a default judgment cannot serve as the basis for a finding of issue preclusion, holding that if there is a finding of delay or other sanctionable actions by a party, issue preclusion may be applied to a judgment imposing terminal sanctions against such party. *See e.g., Kirkland,* 2008 WL 8444824, at *9–11 (citing cases); *In re Daily,* 47 F.3d at 368–69 (holding that a judgment entered as a sanction for discov-

---

**8.** The elements of issue preclusion under federal law are that:
(1) there was a full and fair opportunity to litigate the issue in the previous action;
(2) the issue was actually litigated in that action;
(3) the issue was lost as a result of a final judgment in that action; and
(4) the person against whom collateral estoppel is asserted in the present action was

a party or in privity with a party in the previous action.
*In re Palmer,* 207 F.3d at 568.

**9.** *Kirkland* acknowledges there is no controlling Arizona precedent dealing with whether a default judgment entered as a discovery sanction might satisfy the actually litigated element of issue preclusion. *Kirkland,* 2008 WL 8444824, at *5 n. 17.

ery abuses was entitled to preclusive effect under federal issue preclusion law). Other courts applying the law of a state which allows a default judgment to serve as a basis for issue preclusion (such as California and Florida) understandably do not need to evaluate the level of participation or nature of conduct before applying issue preclusion. *See, e.g., Younie,* 211 B.R. at 375 ("Debtors have not presented any California case law which holds that the collateral estoppel effect of a default judgment is modified by the amount of participation by the defendant, short of not filing an answer, in the litigation.")

In this specific regard, to the extent *Kirkland, Bell* and *Daily* allow sanctionable or other wrongful conduct to serve as a basis for issue preclusion, such authority is unsupported by Arizona law and is inapplicable here. Moreover, the record in this appeal contains no finding by either the Superior Court or the bankruptcy court of sanctionable delay tactics by Debtor or other wrongful conduct.[10]

Ultimately, a party's failure to participate in litigation to a substantial degree prevents application of issue preclusion under Arizona law. *See, e.g., Ward,* 1994 WL 134682, at *1, *3; *Kirkland,* 2008 WL 8444824, at *7–11; *Bigelsen,* 853 P.2d at 1138. Thus, the bankruptcy court's ruling at the hearing on summary judgment was based on an incorrect interpretation of Arizona law, that Child's inferred choice not to litigate at some substantial level allowed application of issue preclusion. Further, the evidence in the record does not substantiate a finding that Child's actual level of participation was sufficient as a matter of law to allow issue preclusion under Arizona law, which appears to require a level of participation beyond mere physical appearance and the minimal nature of involvement here. *See, e.g., Ward,* 1994 WL 134682, at *1, *3; *Bell,* 2008 WL 2277875, at *4–5; *Kirkland,* 2008 WL 8444824, at *7–11; *Bigelsen,* 853 P.2d at 1138.

## VI. CONCLUSION

Application of Arizona issue preclusion law against Child requires that his level of participation in the Superior Court Action be of a more substantial degree than occurred here. As such, we conclude the bankruptcy court improperly gave preclusive effect to the Arizona Judgment. Therefore, we REVERSE the summary judgment and REMAND the adversary proceeding to the bankruptcy court for further proceedings in accordance with this disposition.

---

**10.** To the extent the bankruptcy judge gave weight to Child's repeated statements that he would file bankruptcy as a sanction based reason to apply issue preclusion to the Arizona Judgment, including by referring to Child's failure to "timely" exercise the option of filing bankruptcy, such approach is not supported by Arizona law.