FILED

SEP 1 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1214-SGF |
| | BAP No. CC-19-1232-SGF |
| LISA M. GARCIA, | (Cross-Appeals) |
| Debtor. | |
| | Bk. No. 6:18-bk-10058-SC |
| LISA M. GARCIA, | Adv. No. 6:18-ap-01065-SC |
| Appellant/Cross-Appellee, | |
| v. | **MEMORANDUM**[*] |
| SAMEH FAWZY, | |
| Appellee/Cross-Appellant. | |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and FARIS, Bankruptcy Judges.

## INTRODUCTION

The bankruptcy court entered judgment excepting from discharge an

Arizona state court judgment that creditor Sameh Fawzy obtained against

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Chapter 7[1] debtor Lisa Garcia. The state court judgment was based on conversion and constructive fraud. The bankruptcy court granted Fawzy relief under § 523(a)(6) but denied him relief under § 523(a)(2)(A). Garcia appeals from the § 523(a)(6) ruling. Fawzy cross-appeals from the § 523(a)(2)(A) ruling.

Both rulings hinged on whether Garcia's state of mind, as found by the Arizona jury, was the same as that required for nondischargeability under either § 523(a)(6) or § 523(a)(2)(A). The bankruptcy court answered this question in the affirmative for § 523(a)(6) but in the negative for § 523(a)(2)(A). With respect to § 523(a)(6), nothing in the state court record demonstrates that the jury actually found, or needed to find, that Garcia harbored an intent to injure Fawzy or subjectively believed that injury was substantially certain to occur as a result of her conduct.

As for § 523(a)(2)(A), the bankruptcy court correctly declined to apply issue preclusion to satisfy the fraud element of intent to deceive. The record from the state court trial did not establish that the jury actually and necessarily decided that Garcia intended to deceive Fawzy.

The record arguably suggests that the bankruptcy court may have intended to alternately grant judgment on the § 523(a)(6) claim based on

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

the parties' stipulated facts and other evidence presented at the bankruptcy court trial. But the bankruptcy court did not render a specific finding of fact on the willfulness element. On this record, we only can speculate as to what the bankruptcy court intended with respect to the evidence it admitted at trial and what it believed this evidence established. Therefore, we will remand the § 523(a)(6) claim for the bankruptcy court to clarify whether, in the absence of issue preclusion, the admissible evidence presented at the bankruptcy court trial, including specific parts of the state court trial transcript, established that Garcia acted willfully and maliciously within the meaning of § 523(a)(6).

Consequently, we AFFIRM the bankruptcy court's § 523(a)(2)(A) ruling, but we VACATE its § 523(a)(6) ruling and REMAND for further proceedings.

## FACTS

Fawzy and Garcia met in 2000 and were engaged in 2003. At the time of their engagement, the couple lived in Tennessee, where Fawzy had purchased and operated a grocery store. Garcia loaned Fawzy $48,878.23 to help fund the grocery store purchase. In 2004, however, Garcia moved to New York to attend a two-year physician's assistants program. Around this same time, Fawzy enlisted in the United States Army. Before deploying to Iraq, Fawzy executed a general power of attorney which enabled Garcia to manage his financial affairs. He also leased the grocery store to a third

3

party for a one-year term. At the end of the lease term, the third party purchased the grocery store from Fawzy. During Garcia's time in Tennessee and New York, Fawzy financially supported her.

Fawzy returned from his Iraq deployment in late 2005 or early 2006, with several injuries requiring treatment. During the first half of 2006, while Fawzy still was convalescing, Garcia withdrew a total of $76,134.10 from the couple's joint bank accounts, without Fawzy's knowledge or approval. Of this amount, Garcia originally transferred $10,900.00 from Fawzy's separate business bank account to one of the couple's joint accounts, from which she later withdrew it.

Additionally, Fawzy owned a Toyota 4Runner that Garcia had been using for years. When Fawzy moved to Tennessee to open his grocery store, he left the 4Runner with Garcia so she could use it. But he remained the owner of record. When Garcia moved to Tennessee, she drove the vehicle there from California, where she formerly lived. She next took the 4Runner with her to New York. In April 2006, she changed title to the vehicle into her own name, without telling Fawzy. She signed Fawzy's name on the documentation transferring title, instead of signing her own name and using her power of attorney. In September 2006, after taking Fawzy to the Walter Reed Medical Hospital for further treatment, she drove the vehicle to California, where she again relocated.

Sometime in 2006, the couple ended their relationship. Afterwards,

4

Fawzy unsuccessfully attempted to recover from Garcia his 4Runner and his cash. Then, in 2007, Garcia again relocated – this time to Arizona. In late 2007, Fawzy filed a complaint in Arizona state court against Garcia seeking to recover the vehicle and the cash.

Garcia filed an answer and counterclaim. According to Garcia, when Fawzy bought the grocery store, she became his partner by funding roughly half of its purchase price. She also claimed that she worked full time at the grocery store in 2003 and 2004, but she never received any compensation for doing so. In contrast, she asserted that Fawzy paid himself at least $4,000 per month over the same time period. She also claims he withdrew thousands of dollars from their joint bank accounts for his individual purposes and benefit. In October 2008, while the state court lawsuit was pending, Garcia transferred back to Fawzy title to and possession of the 4Runner.

The state court held a jury trial in 2009. The jury found that Garcia converted the 4Runner and the $10,900.00 she transferred from Fawzy's business bank account. The jury awarded Fawzy $7,400.00 for conversion of the 4Runner but awarded no damages for conversion of the $10,900.00.[2]

---

[2] The jury appears to have awarded zero damages for conversion of the $10,900.00 because it instead compensated Fawzy for that loss as part of his constructive fraud damages for Garcia's withdrawals from the couple's joint accounts. Because Garcia initially transferred the $10,900.00 to one of the couple's joint bank accounts, and later withdrew these and other funds from the joint accounts (which was the basis for

(continued...)

The jury next found that Garcia was liable for $76,134.10 plus interest for constructive fraud, arising from her withdrawals from the couple's joint checking accounts in 2006. The jury also awarded Fawzy punitive damages of $40,000.00, plus attorney's fees. In addition to the jury verdicts granting Fawzy relief, the jury denied Garcia relief on her breach of contract, partnership, and conversion counterclaims.

The punitive damages award against Garcia was based on the jury's finding that Garcia "acted with an evil mind and committed fraud against Mr. Fawzy." The state court instructed the jury in detail regarding what constitutes an evil mind under Arizona law. It instructed the jury that any of the following could support an evil mind finding: "1, intent to cause injury; Or 2, wrongful conduct motivated by spite or ill will; Or 3, Ms. Garcia acted to serve her own interests having reason to know and consciously disregarding a substantial risk that [her] conduct may significantly injure the rights of others."

In contrast, the jury was not given a jury instruction regarding what it generally means to "commit fraud." The only fraud-related claim on which the court instructed the jury was constructive fraud. The constructive fraud jury instruction made it clear that intent to deceive was

<hr>

[2](...continued)
the constructive fraud claim), the jury only could award the $10,900.00 in damages one time in order to avoid double-counting these funds in Fawzy's damages award.

not required in order to establish liability for constructive fraud. Indeed, the constructive fraud jury instruction advised the jury that "intent of the party charged" was irrelevant to the constructive fraud cause of action.[3]

After the jury rendered its verdict in favor of Fawzy, the court awarded $25,000.00 for attorney's fees, prejudgment interest of $15,456.27, and court costs and jury fees of $10,331.61. It then entered final judgment in June 2009 in the aggregate amount of $174,321.98.

Subsequently, Garcia commenced her bankruptcy case by filing a voluntary chapter 7 petition. Fawzy timely filed a complaint seeking to except the judgment debt from discharge under §§ 523(a)(2)(A) and (a)(6). He then filed a motion for summary judgment based on the § 523(a)(6) claim and the asserted issue preclusive effect of the state court judgment. The bankruptcy court denied the summary judgment motion. According to the court, the jury's findings did not establish the requisite state of mind for nondischargeability under § 523(a)(6).

---

[3] The state court's punitive damages instruction stated: "If you decide that Ms. Garcia intended to defraud Mr. Fawzy in regard to the bank withdrawals, you must decide whether that conduct justifies an award of punitive damages." At oral argument, we asked Fawzy's counsel whether the reference to "intended to defraud" in the punitive damages jury instruction might provide an alternate ground for the application of issue preclusion to the state of mind issue. In response, Fawzy's counsel candidly acknowledged that intent to defraud was neither actually litigated nor necessarily decided in the state court action. In light of this concession, we do not consider whether the "intended to defraud" reference in the punitive damages jury instruction could have supported the application of issue preclusion to the state of mind issue.

Prior to trial, the parties stipulated to numerous admitted facts, including many of the facts set forth above. The court approved the parties' amended joint pretrial stipulation and set the matter for trial, with all direct testimony to be submitted by declaration. At the pretrial conference, the parties discussed the admission and use of the state court trial transcript as an exhibit. The court indicated that the state court transcript would be admitted but that any party seeking to use it to prove the truth of the matter testified to would need to make the witness who previously testified available at the bankruptcy court trial for potential additional cross-examination.

Fawzy presented a half-page declaration at the bankruptcy court trial and relied on the admitted facts from the pretrial stipulation. He also argued that the state court judgment, jury verdict, and state court trial transcript demonstrated his entitlement to issue preclusion on all elements necessary for relief under both §§ 523(a)(2)(A) and (a)(6). At the conclusion of trial, the court rendered oral findings of fact and conclusions of law. The court concluded that issue preclusion applied to establish all of the elements for nondischargeability under § 523(a)(6) but not under § 523(a)(2)(A).

The bankruptcy court supplemented its oral findings of fact and conclusions of law with a memorandum decision after trial. With respect to § 523(a)(2)(A), the bankruptcy court stated that nothing in the state court

8

jury instructions or jury verdict established that the jury found Garcia acted with an intent to deceive. As for § 523(a)(6), the court relied on the state court jury findings to reach its conclusion that Garcia willfully injured Fawzy.

The bankruptcy court entered its nondischargeability judgment on August 27, 2019. Garcia timely appealed and Fawzy timely cross-appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court commit reversible error when it applied issue preclusion to establish Garcia's state of mind for purposes of § 523(a)(6)?

2. Did the bankruptcy court commit reversible error when it admitted into evidence the state court trial transcript?

3. Did the bankruptcy court commit reversible error when it held that issue preclusion could not be applied to establish Garcia's state of mind for purposes of § 523(a)(2)(A)?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's determination that issue preclusion was available. *Tomkow v. Barton (In re Tomkow)*, 563 B.R. 716, 722 (9th Cir. BAP 2017); *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456,

9

461 (9th Cir. BAP 2015). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014). (citations omitted).

When issue preclusion is available, the bankruptcy court's decision to actually apply it is reviewed for abuse of discretion. *In re Tomkow*, 563 B.R. at 722; *In re Plyam*, 530 B.R. at 461. "A bankruptcy court abuses its discretion if it applies the wrong legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *In re Tomkow*, 563 B.R. at 722.

We review a bankruptcy court's evidentiary rulings for abuse of discretion, and then only reverse if any error would have been prejudicial to the appellant. *Mbunda v. Van Zandt (In re Mbunda)*, 484 B.R. 344, 351 (9th Cir. BAP 2012), *aff'd*, 604 F. App'x 552 (9th Cir. 2015).

## DISCUSSION

### A. Appeal from § 523(a)(6) Ruling.

#### 1. Application of issue preclusion in nondischargeability actions.

The doctrine of issue preclusion applies in nondischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284–85 n.11 (1991). Federal courts must give full faith and credit to state court judgments. 28 U.S.C.

10

§ 1738. This means that the bankruptcy court was required to give the Arizona state court's judgment the same preclusive effect it would be given by Arizona courts. *See Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir.2001). Thus, Arizona law determines the preclusive effect of the state court judgment. In Arizona, issue preclusion cannot be applied unless:

> (1) the issue or fact to be litigated was actually litigated in a previous suit,

> (2) a final judgment was entered, and

> (3) the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter,

> (4) and actually did litigate it, [and]

> (5) such issue or fact was essential to the prior judgment.

*Child v. Foxboro Ranch Estates, LLC (In re Child)*, 486 B.R. 168, 172-73 (9th Cir. BAP 2013) (emphases omitted) (quoting *Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (Ariz. 1986)). An issue is actually litigated when it "is properly raised by the pleadings or otherwise, and is submitted for determination, and is determined . . . ." *Kopp v. Physician Grp. of Ariz., Inc.*, 421 P.3d 149, 152 (Ariz. 2018) (quoting *Chaney Bldg. Co.*, 716 P.2d at 30). An issue is essential to the judgment when the prior decision could not have been rendered without it. *See Fuller v. Hartford Accident & Indem. Co.*, 601 P.2d 1360, 1362–63 (Ariz. Ct. App. 1979), *cited with approval in Farmers Ins.*

11

*Co. of Ariz. v. Vagnozzi*, 675 P.2d 703, 705 (Ariz. 1983).[4]

"The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal *the controlling facts and the exact issues litigated.*" *In re Child*, 486 B.R. at 172 (emphasis added). "Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the collateral estoppel effect." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996).

### 2. Legal standards governing § 523(a)(6).

Section 523(a)(6) excepts from discharge debts arising from willful and malicious injuries to an entity or its property. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010); *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008). The willfulness and malice elements are legally distinct and require separate consideration. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (9th Cir. 2002). Under § 523(a)(6), a debt arises from a "willful" injury when the debtor

---

[4] Even when the threshold requirements for issue preclusion are met, Arizona courts may decline to apply issue preclusion when the underlying policies of judicial economy and avoidance of inconsistent results are outweighed by other competing policy concerns. *Hullett v. Cousin*, 63 P.3d 1029, 1035 (Ariz. 2003); *see also Ferris v. Hawkins*, 660 P.2d 1256, 1258 (Ariz. Ct. App. 1983) ("Principles of issue preclusion should not be applied, however, where 'there is some overriding consideration of fairness to a litigant, which the circumstances of the particular case would dictate."(quoting *Di Orio v. City of Scottsdale*, 408 P.2d 849, 852 (Ariz. Ct. App. 1965))).

12

subjectively intended to cause injury to the creditor or subjectively believed that injury was substantially certain to occur. *In re Ormsby*, 591 F.3d at 1206; *In re Su*, 290 F.3d at 1144-46. A debt arises from a "malicious" injury when it is based on: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Ormsby*, 591 F.3d at 1207 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)).

### 3. Analysis.

#### a. Issue preclusion argument.

Garcia principally argues on appeal that the state of mind required for relief under § 523(a)(6) was not actually litigated or essential to the judgment in the Arizona lawsuit. To support this argument, Garcia points out that no particular state of mind is required for conversion or constructive fraud. This is a correct statement of Arizona law. *See Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (stating elements for conversion); *see also Liberty Life Ins. Co. v. Myers*, Case No. CV 10–2024–PHX–JAT, 2013 WL 530317, at *13 (D. Ariz. Feb. 12, 2013) (same); *McManus v. Am. Express Tax & Bus. Servs., Inc.*, 67 F. Supp. 2d 1083, 1089 (D. Ariz. 1999) ("To establish constructive fraud, all elements of actual fraud *except* the element of intent must be established." (emphasis added)).

The bankruptcy court did not rely on the state court jury's verdict for conversion or constructive fraud to establish Garcia's intent to injure.

13

Instead, the court relied on the jury's finding that she acted with an evil mind required to impose punitive damages. Yet Garcia asserts that to award punitive damages, the state court jury neither found, nor needed to find, the state of mind required for relief under § 523(a)(6). The jury was instructed that to find that Garcia acted with an evil mind, it had to find:

> 1, intent to cause injury;

> Or 2, wrongful conduct motivated by spite or ill will;

> Or 3, Ms. Garcia acted to serve her own interests having reason to know and consciously disregarding a substantial risk that [her] conduct may significantly injure the rights of others.

This instruction is consistent with Arizona case law holding that "[a] tortfeasor manifests an 'evil mind' if he either 'intended to injure the plaintiff' or 'consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.'" *Quintero v. Rogers*, 212 P.3d 874, 879 (Ariz. Ct. App. 2009) (quoting *Gurule v. Ill. Mut. Life & Cas. Co.*, 734 P.2d 85, 87 (Ariz. 1987))

As Garcia notes, this standard is stated in the disjunctive and the last of the three disjunctive requirements sets forth a less culpable mental state than that required under § 523(a)(6). Garcia reasons that in finding that she acted with an "evil mind," the jury did not necessarily find that she intended to injure Fawzy or that she believed injury to Fawzy was substantially certain to occur.

It is beyond cavil that a conscious disregard of substantial risk is insufficient to qualify as a willful intent to injure under § 523(a)(6). The Arizona standard focuses on creating a *substantial risk* of harm. *Quintero*, 212 P.3d at 879. In contrast, the willfulness component of § 523(a)(6) requires proof that the debtor had a subjective intent to injure or a subjective belief that injury was *substantially certain* to occur. *In re Plyam*, 530 B.R. at 463 (citing *In re Su*, 290 F.3d at 1144). We made clear in *Plyam* that any level of risk below a substantial certainty is insufficient for § 523(a)(6) purposes. As we observed in *Plyam*, "[e]ven a strong probability that consequences may result, however, is not equivalent to substantial certainty for the purposes of intent."[5] *Id.* at 468 (citing Restatement

---

[5] The following comment from the Restatement (Second) of Torts emphasizes this point by explaining the differing levels of risk associated with different levels of culpability:

All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in § 500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence, as defined in § 282. All three have their important place in the law of torts, but the liability attached to them will differ.

(continued...)

(Second) of Torts § 500 cmt. f (1965)).

A conscious disregard of risk was, therefore, an insufficient state of mind to establish § 523(a)(6) willfulness. The bankruptcy court nonetheless applied issue preclusion. It reasoned that, notwithstanding the disjunctive legal standard for evil mind, the jury actually litigated and needed to find that Garcia intended to injure Fawzy. According to the bankruptcy court, this conclusion logically followed from Fawzy's testimony during the state court trial that Garcia admitted to him she had withdrawn the funds from the couple's joint accounts for the purpose of hurting him.

There are several problems with the bankruptcy court's application of issue preclusion to establish a willful injury. As a threshold matter, Fawzy's testimony only related to the withdrawn funds. There is nothing in the record that ties this testimony to the 4Runner.

More importantly, however, we cannot know whether the jury relied on Fawzy's testimony that Garcia wanted to injure him because it was not essential to the jury's evil mind finding. It is just as plausible that the jury relied on conscious disregard in making this finding. In other words, intent

<hr/>

⁵(...continued)
Restatement (Second) of Torts § 8A, cmt. b (1965). In *Plyam* we explained that: "Degrees of recklessness may exist; but, again, whether recklessness is heightened or gross, it is insufficient for a determination of § 523(a)(6) willfulness." *In re Plyam*, 530 B.R. at 467. Because conscious disregard of substantial risk falls below the standard for intent to injure under §523(a)(6), we need not, and do not, express any opinion where Arizona's alternate basis for an evil mind of spite or ill will might fall on this continuum.

16

to injure was not necessary for the jury to find that Garcia acted with an evil mind. While the testimony cited by the bankruptcy court could have supported a finding of intent to injure, that possibility did not make it essential for purposes of issue preclusion. *See In re Plyam*, 530 B.R. at 470; *see also W. Cable v. Indus. Comm'n of Ariz.*, 698 P.2d 759, 763 (Ariz. Ct. App. 1985) (holding that finding of disability was not essential to the judgment for issue preclusion purposes because it was not necessary for the judgment awarded).

The state court gave the jury three separate bases to find that Garcia had acted with an evil mind. At least one of these bases did not require an intent to injure. There is no means to determine which of these the jury used. Accordingly, the bankruptcy court simply had no logical or legal basis to find that the Arizona jury based its determination of evil mind on an intent to injure. On this record, there is significant reason to doubt that the evil mind finding was based on an implicit finding of intent to injure. The bankruptcy court, therefore, erred in applying issue preclusion to conclusively establish the requisite state of mind for willfulness under § 523(a)(6).[6]

---

[6] Neither the bankruptcy court nor the parties focused much on the maliciousness elements required under § 523(a)(6). For purposes of this decision, we also express no opinion regarding the applicability of issue preclusion to § 523(a)(6)'s maliciousness elements.

### b.      Section 523(a)(6) judgment in the absence of issue preclusion.

In light of our holding that the bankruptcy court erred in its application of issue preclusion, we next must consider whether the court's § 523(a)(6) judgment may be affirmed without the application of issue preclusion. As part of the trial, the parties presented the bankruptcy court with admitted facts, and the court accepted into evidence a significant amount of additional evidence, including the entirety of the state court trial transcript. We also acknowledge that, in its memorandum decision, the bankruptcy court noted that it was relying on both the admitted facts and evidence presented during the bankruptcy court trial, in addition to issue preclusion, to find that Garcia had willfully and maliciously intended to injure Fawzy. Even so, in both the bankruptcy court's oral ruling and in its memorandum decision, when the bankruptcy court specifically discussed willfulness, it relied exclusively on issue preclusion. It never stated that it was independently finding willfulness based on the evidence presented during the bankruptcy court trial.

Under Civil Rule 52(a)(1), made applicable in adversary proceedings by Rule 7052, "the court must find the facts specially and state its conclusions of law separately." Thus, the bankruptcy court needed to make a specific finding of fact on willfulness. It did not. Indeed, the bankruptcy court made no specific findings of fact with respect to any of the § 523(a)(6)

18

elements. This, by itself, justifies remand in this matter. "In the absence of complete findings, we may vacate a judgment and remand the case to the bankruptcy court to make the required findings." *First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.)*, 470 B.R. 864, 871 (9th Cir. BAP 2012) (citing *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005)); *see also Simeonoff v. Hiner*, 249 F.3d 883, 891, 894 (9th Cir. 2001) (holding that remand is required when a "full understanding" of the trial court's decision is not possible without additional findings).

In sum, though we can affirm on any basis supported by the record, *Lakhany v. Khan (In re Lakhany)*, 538 B.R. 555, 559 (9th Cir. BAP 2015), we cannot make findings on the bankruptcy court's behalf in the first instance, *In re First Yorkshire Holdings, Inc.*, 470 B.R. at 871. Because the bankruptcy court incorrectly applied issue preclusion to establish the willfulness element and did not specifically find that Garcia willfully injured Fawzy, we must remand so that the bankruptcy court can determine whether it wants to find willfulness based on the trial record presented.

### c.     Evidentiary arguments.

Finally, we address a number of evidentiary arguments raised by Garcia. These arguments relate to the court's admission and use of the state court trial transcript in the nondischargeability trial. The bankruptcy court stated that it was admitting the state court trial transcript for the truth of matters asserted. Indeed, the memorandum decision points out that the

19

"transcript is now part of this Court's record pursuant to Defendant's non-objection to the admission into evidence of the State Court Trial Transcript." Garcia contends that she did object to the admission of the transcript as substantive evidence, and that the bankruptcy court erroneously denied her cross-examination on testimony presented in the state court trial.

### i. The transcript was neither introduced as a declaration nor authenticated.

Garcia initially contends that the state court trial transcript constituted "testimony" and that the bankruptcy court's admission of it as testimony violated its own order that all trial testimony needed to be submitted by declaration. But the court's self-imposed restriction regarding presentation of direct testimony by declaration specifically did not apply to the transcript. The court made this abundantly clear at the pretrial hearing. Nor can Garcia claim that she suffered from any legitimate confusion regarding the court's decision at the pretrial hearing to admit the state court transcript.

Garcia also contends that Fawzy failed to authenticate the transcript. This argument similarly has no merit.  The certified copy of the transcript the bankruptcy court admitted was self-authenticating. *See* Fed. R. Evid. 902(4); *Ball v. A.O. Smith Corp.*, 321 B.R. 100 (N.D.N.Y. 2005) (holding that trial transcripts are self-authenticating under Rule 902(4), where transcripts

20

contained court reporter's certification).[7]

### ii. The transcript constitutes inadmissable hearsay.

Garcia next argues that the admission of the transcript violated the rule against hearsay. Garcia did not raise a hearsay objection at trial when Fawzy presented the transcript for admission into evidence. As a result, Fawzy asserted – and the bankruptcy court concluded – that Garcia waived her hearsay objection. *See* Fed. R. Evid. Rule 103(a); *see also De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 879-80 (9th Cir. 2000).

We disagree that Garcia waived her hearsay objection. When the court pressed Garcia to stipulate to admission into evidence of the entire state court trial transcript at the pre-trial conference, Garcia demurred citing hearsay as the specific basis for her demurrer. The court then stated that, "[t]here's no hearsay. It's a trial record. It's a court document. So, there's no – there's a lot of exceptions to the hearsay rule with respect to transcripts of trials . . . ." Pretrial Hr'g Tr. (Mar. 20 , 2019) 11:8-12.

After Garcia attempted to re-frame her objection, the court concluded:

> But I'm telling you that the trial transcripts are coming in. . . . If he is going to introduce the trial transcripts of the 2009 trial that

---

[7] Garcia further claimed that the admission of the trial transcript violated Civil Rule 32(a) regarding the use of *deposition* transcripts against a party at trial. But none of the authority that Garcia relies on dealt with the use of a *trial* transcript from a prior court proceeding.

resulted in a judgment . . . that train has left the station.

\* \* \*

There is – and mark it down right now that you can appeal. That I said that that trial transcript is coming in and I will review it. . . . [T]he point is there are innumerous exceptions to the hearsay rule with respect to trial transcripts that have occurred.

Pretrial Hr'g Tr. (Mar. 20 , 2019) 12:24-13:23.

Garcia sufficiently raised her hearsay objection to the admission of the transcripts to preserve her objection for appeal. "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." *United States v. Sepulveda-Barraza*, 645 F.3d 1066, 1070 (9th Cir. 2011) (quoting Fed. R. Evid. 103); *see also Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986). This is because "[t]he purpose of requiring a party to timely object is to ensure that the district court has an opportunity to cure any potential errors in the first instance." *United States v. Palmer*, 3 F.3d 300, 304 (9th Cir. 1993) (citation omitted). No legitimate interest is served by requiring an objecting party to subsequently renew its objection to the admission of evidence when the court clearly was aware of the specific objection and already explicitly and definitively ruled on it. *Id.* The bankruptcy court explicitly and definitively rejected Garcia's hearsay objection to admission of the trial transcript at the pre-trial

conference. Garcia did not need to renew the hearsay objection at trial in order to preserve it.

As to the substance of the objection, we are concerned with evidentiary rulings only to the extent they are prejudicial. Fed. R. Evid. 103(a). Harmless errors in evidentiary rulings must be ignored. *See, e.g., Nautilus Marine Enters., Inc. v. Exxon Mobile Corp. (In re Exxon Valdez)*, 745 F. App'x 262, 264-65 (9th Cir. 2018); *In re Mbunda*, 484 B.R. at 355. Furthermore, to the extent the bankruptcy court sought to rely on state court trial testimony to find willfulness, affording Garcia with an opportunity to cross-examine witnesses on the relevant trial testimony informs our hearsay analysis and our harmless error analysis. In other words, the availability of a full and fair opportunity to cross-examine might either except or exclude the former testimony from the rule against hearsay or might render any error with respect thereto harmless. *See* Fed. R. Evid. 103(a), 801(d)(1), 804(b)(1).

Here, we cannot meaningfully review the bankruptcy court's hearsay ruling or determine whether any error with respect to its hearsay ruling was harmless. Nor can we meaningfully assess the impact of cross-examination on the hearsay and harmless error analyses. In order to make a reasoned ruling on a hearsay objection to the admission of prior hearing testimony, the court needed to identify what portion(s) of the testimony it was considering and to specify for what purpose(s) the testimony was

being allowed into evidence. *See, e.g.*, *United States v. Innamorati*, 996 F.2d 456, 475 (1st Cir. 1993); *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir. 1981); *see also United States v. Coplan*, 703 F.3d 46, 85 (2d Cir. 2012) (affirming district court's decision to admit selective portions of deposition transcripts but refusing to admit them in their entirety).

Thus, on remand, to the extent the bankruptcy court intended to find that Garcia willfully injured Fawzy, it will need to identify which portions (if any) of the state court trial transcript it is relying on in making that finding. It also may wish to supplement or amend its hearsay ruling to clarify why the rule against hearsay did not bar admission of the particular state court trial testimony relied on. In the event of an appeal after remand, this additional information should enable us to render the necessary review of any lingering hearsay and cross-examination issues, as well as assess whether any related error was harmless.[8]

---

[8] We recognize that the bankruptcy court admitted the state court trial transcript primarily to aid its determination of what the jury considered and what it found for purposes of establishing the availability of issue preclusion. It is axiomatic that a party advocating for issue preclusion can and must present an adequate record from the prior court proceeding to establish exactly which issues actually were litigated in the prior proceeding. *See In re Child*, 486 B.R. at 172 (citing *In re Kelly*, 182 B.R. at 258). Such an adequate record sometimes may require submission of a transcript from the prior court proceeding. The use of the transcript for this purpose is not in violation of the rule against hearsay because the proponent is not offering the prior testimony to prove the truth of what the declarant stated but rather to prove which issues were addressed and resolved in the prior proceeding. *See Tremont LLC v. Halliburton Energy Servs., Inc.*, 696 F.

(continued...)

## B.    Cross-Appeal From § 523(a)(2)(A) Ruling.

### 1.    Legal standards governing § 523(a)(2)(A).

Generally speaking, § 523(a)(2)(A) excepts from discharge debts incurred by false pretenses, a false representation, or actual fraud. *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (9th Cir. BAP 2009). The requisite fraud typically is established when the creditor establishes the following five elements:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) *an intent to deceive*; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Id.* (quoting *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000)) (emphasis added).[9]

---

[8](...continued)
Supp. 2d 741, 752 n.8 (S.D. Tex. 2010).

[9] Fawzy believes that, under *Husky International Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1586-88 (2016), intent to deceive no longer is necessary to establish a claim for relief under § 523(a)(2)(A). We disagree with Fawzy's attempts to extend *Husky* to his dispute with Garcia. *Husky* does not bring Fawzy's garden-variety conversion and constructive fraud damages within the ambit of § 523(a)(2)(A). Indeed, *Husky* recognized that § 523(a)(2)(A) only covers "actual fraud" and not "implied fraud." *Id.* at 1486. However broad *Husky* might be interpreted, we will not construe it as implicitly overruling decades of Ninth Circuit nondischargeability law generally requiring proof of intent to deceive to support a claim under § 523(a)(2)(A). *See Am. Express Travel*

(continued...)

## 2. Analysis.

In Arizona, a claim of fraud requires the plaintiff to establish by clear and convincing evidence:

> (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

*Nielson v. Flashberg*, 419 P.2d 514, 517-18 (Ariz. 1966). These elements meet or exceed what is required for nondischargeable fraud under § 523(a)(2)(A).

However, the state court jury only was instructed to consider conversion and constructive fraud. The state court jury did not consider – and did not need to consider – actual fraud. Neither the conversion claim, nor the constructive fraud claim, required Fawzy to establish that Garcia harbored any particular state of mind. *See Blau v. Am.'s Servicing Co.*, No. CV-08-773-PHX-MHM, 2009 WL 3174823, at *3 (D. Ariz. Sept. 29, 2009) (citing *Dawson v. Withycombe*, 163 P.3d 1034, 1057-58 (Ariz. Ct. App. 2007)); *Miller*, 104 P.3d at 203.

Fawzy contends that, during the state court trial, he proved that

---

[9](...continued)
*Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1996) (citing *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991)).

26

Garcia concealed her cash withdrawals and her transfer of ownership of the 4Runner. Fawzy additionally insists that the jury found concealment as part of its verdicts on conversion and constructive fraud. According to Fawzy, concealment is equivalent to an intent to deceive. Assuming without deciding that the jury found concealment, we still disagree with Fawzy. Under both Arizona law and federal bankruptcy law, the scienter of the defendant is a separate and distinct element from the defendant's act of misrepresenting or concealing facts. *See Oney*, 410 B.R. at 35; *Nielson*, 419 P.2d at 517–18. Simply put, Garcia's conduct and her state of mind are neither factual nor legal equivalents.

Fawzy only attacks the bankruptcy court's holding that issue preclusion should not be applied. He does not specifically and distinctly make any other arguments on appeal. As a result, there is nothing else we need to address to dispose of his cross-appeal. *See Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010). Because Fawzy's issue preclusion argument lacks merit, we AFFIRM the bankruptcy court's § 523(a)(2)(A) ruling.

## CONCLUSION

For the reasons set forth above, we AFFIRM in part and VACATE in part the bankruptcy court's nondischargeability judgment. Additionally, we REMAND for further proceedings consistent with this decision.